1  LAWRENCE A. JACOBSON SB# 057393
   SEAN M. JACOBSON SB# 227241
2  COHEN AND JACOBSON, LLP
   900 Veterans Boulevard, Suite 600
3  Redwood City, California 94063
   Telephone: (650) 261-6280
4  Facsimile:  (650) 368-6221

5  Attorneys for Debtor
   China Village, LLC

6

7              UNITED STATES BANKRUPTCY COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9                   SAN JOSE DIVISION

10
   In re:                              Case No. 10-60373 ASW
11
   CHINA VILLAGE, LLC,                 Chapter 11
12
                 Debtor.
13  _____

14
              **DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT**
15            **OF CHAPTER 11 PLAN OF REORGANIZATION**

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

I.      PURPOSE OF DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.     VOTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

III.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
        A.      Preliminary Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
        B.      Status of Bankruptcy Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
        C.      Description of the Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
        E.      Forbearance Agreement Between Cathay Bank and Redwood Mortgage . . . . -10-
        F.      Non-Judicial Foreclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
        G.      Redwood Plan Funding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

IV.     DEBTOR'S CREDITORS AT PRESENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
        A.      Administrative Claims (Class A)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
        B.      Priority Claims (Class B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
        C.      Lien Claimants (Class C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
        D.      Unsecured Claims (Class D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
        E.      Claims of Members (Class E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-

V.      THE ESTATE'S ASSETS AT PRESENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
        A.      Summary of Assets Available to Pay Priority and Unsecured Claims . . . . . . . -16-
        B.      Avoidance Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
        C.      Exempt Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

VI.     PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        A.      Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        B.      Treatment of Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        C.      Treatment of Unimpaired Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        D.      Treatment of Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        E.      Treatment the Class C-2 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

Case: 10-60373    Doc# 67    Filed: 01/02/11    Entered: 01/02/11 13:59:13    Page 2 of 33

| | | | |
|---|---|---|---|
| F. | Treatment of the Class C-3 Claim | ............................................. | -20- |
| G. | Treatment of the Class C-4 and Class C-5 Claims | ......................... | -21- |
| H. | Treatment of Class D Claims | ............................................ | -22- |
| I. | Treatment of Class E Claims | ............................................ | -22- |
| J. | Requirements Pertaining to the Sale of the Property, the Refinance of the Property, or a Contribution from A New or Existing Member | ............. | -23- |
| K. | Manner of Funding of Plan | ............................................. | -24- |
| L. | Term of the Plan | ...................................................... | -24- |
| VII. | COMPARISON WITH CHAPTER 7 | .......................................... | -25- |
| A. | Chapter 11 Reorganization and Chapter 7 Liquidation Alternatives | ...... | -25- |
| B. | Chapter 11 Distribution Scheme | ........................................ | -26- |
| C. | CHAPTER 7 DISTRIBUTION SCHEME | ............................... | -26- |
| VIII. | FEASIBILITY | ........................................................ | -27- |
| IX. | PROPOSED MANAGEMENT AND SALARIES AFTER CONFIRMATION | .... | -28- |
| X. | EXECUTORY CONTRACTS | ............................................. | -28- |
| XI. | LITIGATION | ......................................................... | -28- |
| XII. | MISCELLANEOUS | ................................................... | -29- |
| XIII. | CONCLUSION | ...................................................... | -30- |

Case: 10-60373   Doc# 67   Filed: 01/02/11   Entered: 01/02/11 13:59:13   Page 3 of 33

Debtor in Possession China Village, LLC ("Debtor"[1]) submits the following Disclosure Statement ("Disclosure Statement") with respect to its Chapter 11 Plan of Reorganization ("Plan").

# I.    PURPOSE OF DISCLOSURE STATEMENT

This  Disclosure Statement contains information which may bear upon your decision to accept or to reject the Plan.   The information presented in this Disclosure Statement is provided to enable the parties in interest to make a reasonably informed decision as to whether to vote for or against the Plan.

All of Debtor's statements and representations in this Disclosure Statement, including those relating to the financial, business, and accounting data are those of the Debtor and are not those of the professionals who represent the Debtor.  The financial information in this Disclosure Statement concerning the Debtor is compiled from Debtor's books and records and is unaudited.  The Debtor is unable to warrant or represent that information contained herein is without error, although all reasonable efforts under the circumstances have been made to be accurate.

This Disclosure Statement has been prepared by Debtor's representatives and counsel pursuant to Section 1125 of the Bankruptcy Code in connection with the solicitation of votes on the Plan which is provided to you with this Disclosure Statement.  The purpose of this Disclosure Statement is to provide to Debtor's creditors, who are entitled to vote on the Plan, adequate information to make an informed judgment about whether to accept or reject the Plan.

The Disclosure Statement describes the relevant background and history of Debtor and significant events both before and after the commencement of the Chapter 11 case.  The Disclosure Statement also describes the terms and provisions of the Plan of Reorganization, including the treatment of the various classes of creditors, according to the types of claims held by each creditor, and the manner in which the Debtor will be able to provide such treatment.

_____

[1]  The term "Debtor" refers also to the "Reorganized Debtor," after confirmation, as appropriate to the context.

## II.    VOTING REQUIREMENTS

A creditor whose legal rights are impaired under the Plan and who has filed or is deemed to have filed a proof of claim is entitled to vote to accept or to reject the Plan, unless an objection to such creditor's claim has been filed with the Court.  <u>A claim which is the subject of a pending objection is not entitled to vote on the Plan unless the holder of the claim successfully moves the Court to temporarily allow the claim for voting purposes or unless the Court allows some portion of the claim.  If the Debtor or other party in interest files an objection to your claim, you must move the Court to allow your claim for voting or your vote will not be counted.</u>

In order for the Plan to be confirmed by the Court, two-thirds (2/3) in dollar amount and more than one-half (½) in number of the allowed claims in an impaired class which vote must accept the Plan.  Voting percentages will be based upon the number of ballots actually cast.

After carefully reviewing the Disclosure Statement and the Plan, please indicate your vote to accept or to reject the Plan on the enclosed ballot and return it to Debtor's counsel no later than the date and time specified in the Order Approving Disclosure Statement, which is served herewith. The ballot should be returned to the following address:

> COHEN AND JACOBSON
> Attn: Lawrence A. Jacobson
> 900 Veterans Boulevard, Suite 600
> Redwood City, CA 94063

Your ballot will not be counted unless **<u>received</u>** by the  deadline.  Your ballot will not be counted if it is not signed.  Your ballot will not count unless you indicate whether you accept or reject the Plan.

In tabulating acceptances and rejections, Debtor will use the lesser of (a) the dollar amount you state on your ballot, (b) the dollar amount of your claim as shown on the official claims register, or, if you did not file a proof of claim, (c) the undisputed amount of your claim on Debtor's schedules, unless you move the Bankruptcy Court to allow your claim for voting purposes in a different amount.  The claims register reflects the amount you included on a proof of claim if you

Case: 10-60373    Doc# 67    Filed: 01/02/11    Entered: 01/02/11 13:59:13    Page 5 of 33

filed a proof of claim. You may review the official claims register and Debtor's schedules at the office of the Clerk of the Bankruptcy Court, Third Floor, 280 South First Street, San Jose, California 95113, or by using the PACER electronic docketing system (charges may apply for use of PACER).

## III.   BACKGROUND

### A.   Preliminary Information

**1. Debtor's Name:**

The Debtor is China Village, LLC.

**2. Form of Debtor:**

Debtor is a California limited liability company that was created on May 10, 2005. The members of Debtor are Thomas Nguyen, the Responsible Individual in this case (8%), Joseph Nguyen (9%) and Tuyet Minh Le (83%).

**3. Debtor's Business:**

Debtor is in the business of investing in commercial real property. More particularly, Debtor is in the business of purchasing, leasing, renovating and selling commercial real property. Debtor currently owns a significant commercial property in Fremont, California, that has 370,019 square feet of rentable space on 25.07 acres of land (the "Property"). The Property is more fully described, *infra*. Debtor's business is derived from the sale and leasing of the Property.

**4. Related Entities:**

Debtor does not have any parent, subsidiary, or other related entities.

**5. Other Sources of Income:**

The Debtor has no other sources of income other than from the sale and rental of the Property.

**6. Date of Chapter 11 Petition:**

This case was commenced on October 4, 2010.

**7. Events That Caused the Filing**

The filing of this bankruptcy case resulted from a culmination of events which placed

DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT
OF CHAPTER 11 PLAN OF REORGANIZATION                    -3-

Case: 10-60373   Doc# 67   Filed: 01/02/11   Entered: 01/02/11 13:59:13   Page 6 of 33

considerable financial strain on the Debtor. The primary purpose for the filing of the bankruptcy case was to obtain relief from dual non-judicial foreclosures being pursued by Cathay Bank and Redwood Mortgage. The Property has significant equity, with Debtor having scheduled the value of the Property to be between $49,100,100 and $78,000,000 (based upon appraisals obtained by United Commercial Bank and Redwood Mortgage). The secured claims in this case aggregate the sum of $37,800,000, and the undisputed unsecured claims are approximately $1,200,000. Based upon these calculations, the Property has equity for the benefit of all creditors.

Prior to the commencement of the bankruptcy case Debtor experienced financial difficulties which caused it to be unable to pay obligations on the secured debt. As a consequence, Cathay Bank and Redwood Mortgage initiated non-judicial foreclosure proceedings, with a trustee's sale set for October 4, 2010. During the pre-petition period Debtor sought to negotiate continuances of the non-judicial foreclosure sales, and sought to obtain replacement financing. While progress was made with respect to these efforts, Cathay Bank ultimately declined to continue the trustee's sale, thereby requiring Debtor to initiate this bankruptcy case in order to obtain the breathing spell necessary to protect the equity in the Property and pay creditors.

**B.     Status of Bankruptcy Case**

The Debtor is compliant in its reporting and other administrative requirements, and the 341 Meeting of Creditors has been concluded.

Debtor is presently operating as Debtor-in-Possession. As is discussed more fully herein, during the pre-petition period, and at the outset of the case, Debtor was operating through a court-appointed receiver. The receiver was appointed at the request of Cathay Bank in a state court litigation, with the consent of the Debtor, on June 24, 2009.

On November 2, 2010, Cathay Bank filed (a) a Motion for Relief From Stay (Docket No. 34); and (b) a Motion to Excuse Compliance With 11 U.S.C. § 543 (Docket No. 26). Copies of these documents may be obtained from counsel for Debtor or from the online electronic docket maintained on PACER (charges may apply). The Motion for Relief From Stay sought authority to foreclose

upon the Property, and the Motion to Excuse Compliance sought authority to permit the receiver to remain in place (by requesting that the receiver be excused from the requirements of 11 U.S.C. § 543 which ordinarily requires that a receiver immediately turnover estate property to the debtor).

The Motion for Relief From Stay was denied without prejudice, with the Court issuing a sanction against Cathay Bank in the amount of $4,280. The Motion to Excuse Compliance was denied without prejudice, with the Court indicating that the Debtor would operate as Debtor in Possession pending any further court order.

Subsequent to the denial of the Motion to Excuse Compliance, counsel for the receiver has been in contact with the Debtor regarding effectuating the turnover of assets and records. The Debtor has agreed to the retention of the property manager that had been employed by the receiver such that the property manager will assist with the functions that had been performed by the receiver (including assisting with collecting rent, paying expenses, maintaining the property, and other necessary tasks). The Debtor and property manager will be presenting a request for employment for Bankruptcy Court approval. As part of the request, Debtor and the property manager shall request that the property manager be authorized to use cash collateral to pay monthly operating expenses.

This is a single asset real estate case, and as such Debtor is timely filing its Chapter 11 Plan of Reorganization no later than January 2, 2011. Debtor estimates that the hearing on this Disclosure Statement will take place in February, 2011, and the confirmation hearing will occur in March, 2011.

### C.     Description of the Property

Debtor's primary asset consists of certain commercial real property, which is described in more detail as follows.

####      1.     General Information

The Property at issue is a substantial commercial real property consisting of several parcels. The parcels are located in Fremont, California, and are identified as follows:

Parcel -32: 5950 - 6016 Stevenson Boulevard & 40451 - 40495 Albrae Street

Parcel -34: 40525 Albrae Street

Parcel -35: 5960 Stevenson Boulevard & 40505 - 40545 Albrae Street

The property consists of four (4) separate buildings and has approximately 370,019 square feet of rentable space on 25.07 acres of land.

Cathay Bank holds a deed of trust in first position in the amount of $22,300,000, and Redwood Mortgage holds a deed of trust in second position in the amount of $13,500,000. There are also two other deeds of trust in the amount of $1,000,000 each. As set forth in more detail below, Debtor believes the minimum value of the Property to be at least $46,000,000.

### 2.    History of Secured Claim of Cathay Bank

Debtor acquired the Property in August, 2005, for the purchase price of $23,000,000. The purchase price was funded, in part, by financing provided by Cathay Bank (pursuant to a joint participation agreement with East West Bank). In connection with the financing, Debtor provided a deed of trust to Cathay Bank in the amount of $22,300,000. The secured financing was an "interest only" loan that called for a balloon payment of the principal balance on August 16, 2007.

On or about November 28, 2007, Debtor and Cathay Bank entered into a modification agreement, and related documents, which extended the maturity date to February 16, 2008.

On or about March 11, 2008, Debtor and Cathay Bank entered into a further modification agreement, and related documents, which extended the maturity date to January 5, 2009.

As a result of the current economic climate, Debtor was unable to pay the balloon payment to Cathay Bank. On June 1, 2009, Cathay Bank initiated a litigation in Alameda County Superior Court entitled *Cathay Bank v. China Village*, which case was identified as Case No. HG 09 455257 (the "Alameda County Action"). Pursuant to the Alameda County Action Cathay Bank sought to appoint the receiver, with the Complaint also seeking judicial foreclosure.

On June 12, 2009, Cathay Bank recorded a Notice of Default. In or about August, 2009, Cathay Bank and Redwood Mortgage entered into a forbearance agreement described more fully below.

Following a Case Management Conference on August 16, 2010, the Alameda County Action

was set for trial, with the trial date set for July 25, 2011.  On September 7, 2010, Cathay Bank recorded a Notice of Trustee's Sale by which it indicated an intent to proceed with the non-judicial foreclosure of the Property, with the sale date set for October 4, 2010.

### 3.    History of Secured Claim of Redwood Mortgage

On October 22, 2007, approximately two years after the purchase of the Property, Redwood Mortgage advanced the sum of $13,500,000 to the Debtor.  This loan was secured in second position, junior to the Cathay Bank loan.  The proceeds from this loan were partially used to payoff a seller carry-back note, and partially used to withdraw equity.  Redwood has advanced further sums pursuant to the forbearance agreement with Cathay Bank, and has agreed to make the further advances pursuant to the Redwood Plan Funding.

As a result of the current economic climate, Debtor was unable to pay the balloon payment to Redwood Mortgage.  On or about August 7, 2009, Redwood Mortgage recorded a notice of default, and on November 12, 2009, Redwood Mortgage recorded a Notice of Trustee's Sale.  During the period between the recording of the Notice of Trustee's Sale and the filing of the bankruptcy case, Debtor's representatives sought to obtain replacement financing that would pay the secured claims and provide equity for the development of the Property.  Redwood Mortgage was cooperative during this process, and continued the trustee's sale from time to time in order to permit Debtor to obtain replacement financing.  However, in September, 2010, Cathay Bank indicated that it would not agree to postpone its trustee's sale which was set for October 4, 2010, and therefore Debtor initiated this Chapter 11 case to protect the equity in the Property.

### 4.    History of Other Secured Claims

There exist two junior liens in the amount of $1,000,000 held by Sarabjit Hundal and Gurdip Sekhon.  These liens are secured by junior deeds of trust on the Property.  The liens secure financing provided by these two individuals, which financing is secured by Deeds of Trust recorded on April 10, 2009.  The two deeds of trust were recorded on the same date and time (April 10, 2009 at 8:30 a.m.), however the document numbers reflect that the Deed of Trust of Sarabjit Hundal (Document

Number 2009105658) is senior to the Deed of Trust of Gurdip Sekhon (Document Number

2009105659).  The original loan amounts were $2,000,000 each, and the loans were convertible.

The loans were not converted, and Debtor has paid each loan down to $1,000,000 in principal.

Interest payments on the loans were made through the Summer, 2009, and the Deeds of Trust are

recorded only in the current amount owing, namely $1,000,000 per claimant.

### 5.    Occupancy, Income, and Expenses

The Property is currently rented to commercial tenants, with the rent from the Property

generating Debtor's income.  The current tenants are as follows:

| Address | Tenant | Rent |
|---|---|---|
| 40451 Albrae Blvd. | Mark's Oak Furniture | $3,520.00 |
| 40451/1 Albrae Blvd. | Furniture Showcase #1 | $12,870.00 |
| 40495 Albrae Blvd. | Room Decore Furniture | $5,000.00 |
| 40505 Albrae Blvd. | Furniture and Mattress Gallery | $4,350.00 |
| 40511 Albrae Blvd. | Demaray's Gymnastics | $8,000.00 |
| 40517 Albrae Blvd. | Newwest Furniture | $4,000.00 |
| 40521 Albrae Blvd. | Thuan Do-Elegant Furniture | $4,000.00 |
| 40525 Albrae Blvd. | Furniture Depot | $10,000.00 |
| 40527 Albrae Blvd. | Vu Minh Nguyen | $5,000.00 |
| 40543 Albrae Blvd. | Parrish Fremont Partners | $22,300.17 |
| 40545A Albrae Blvd. | Jesus Alfaro/Torres Pallets | $1,800.00 |
| 5950 Stevenson Blvd. | Furniture Showcase #2 | $14,661.29 |
| 6010-109 Stevenson Blvd. | Rugs on Sale | $4,442.40 |
| 6010A Stevenson Blvd. | World Gourmet | $23,400.00 |
| 6014 Stevenson Blvd. | V Star Bookstore | $2,294.37 |
| Backlot Stevenson Blvd. | Action Movers | $1,000.00 |

Thus, the total current contract rent, which includes certain rent reductions which the receiver

agreed to during the pre-petition period, is $129,638.23.  The recent collection of rent has been lower

than the contractual rent, and in the months proximate to the filing of the bankruptcy case the income

(from rent and common area charges) has been: $119,224.25 (June, 2010), $82,923.37 (July, 2010),

$91,794.37 (August, 2010), $83,315.98 (September, 2010), $70,867.24 (October, 2010), and

$131,497.70 (November, 2010).  Thus, the average monthly income during this six month period

was $96,603.82.

During the same six month period the expenses (not including property taxes) have been

$11,929.45 (June, 2010), $25,473.03 (July, 2010), $15,930.16 (August, 2010), $21,427.69 (September, 2010), $21,425.82 (October, 2010), and $24,699.18 (November, 2010). Thus, the average monthly expenses during this period were $20,142, and the net profit was an average of $76,461 (average income less average expenses).

There exist certain units that are vacant that Debtor is seeking to rent. Some of these vacant units may require repairs or tenant improvements prior to being in condition to rent. Debtor believes that the receiver began certain repairs, and Debtor will continue with substantial roof repairs. The current vacant units are as follows:

| Address | Tenant | Market Rent |
| --- | --- | --- |
| 40495A Albrae Blvd. | Vacant | $382.50 |
| 40495B Albrae Blvd. | Vacant | $6,000.00 |
| 40515 Albrae Blvd. | Vacant | $7,047.10 |
| 40527B Albrae Blvd. | Vacant | $17,000.00 |
| 40539 Albrae Blvd. | Vacant | $1,250.00 |
| 40539A Albrae Blvd. | Vacant | $18,000.00 |
| 40545 Albrae Blvd. | Vacant | $1,300.00 |
| 6000 Stevenson Blvd. | Vacant | $31,382.00 |
| 6008 Stevenson Blvd. | Vacant | $2,178.00 |
| 6014A Stevenson Blvd. | Vacant | $1,500.00 |

The total estimated monthly market rent of vacant units is the sum of $86,039.60 (which does not account for the increased market rent after repairs and/or tenant improvements are complete).

In sum, there are currently 26 units; 16 units are occupied, for an occupancy rate of 62%; Debtor will perform roof repairs and seek tenants for the 10 available units; the current contract rental income is $126,638.23; the average actual income over the past six month period has been $96,603; the average actual expenses over the past six month period have been $20,142; and the available units have a market rent estimated by the receiver to be an additional $86,039.60 such that a 100% occupancy rate would yield income of $212,677 in current condition (Debtor believes that the income would be substantially higher after improvements are made to the Property).

**6.     Debtor's Valuation of the Property**

The Property is scheduled with a value between $49,100,100 and $78,000,000. This

valuation is based upon appraisals obtained by United Commercial Bank and Redwood Mortgage. The lowest valuation of $49,100,000 is based upon the Redwood Mortgage appraisal dated December 1, 2008, which attributed a land value of $49,100,000, and a market value of $69,100,000. The more recent appraisal by United Commercial Bank (which is a lender in connection with the Class C-2 Claim pursuant to the joint participation agreement) dated December 1, 2009, attributes a market value of $78,600,00 and a prospective post-development value of $205,000,000.

Debtor has obtained an appraisal dated November 12, 2010, which attributes a minimum value of $46,000,000. The appraisal was performed by Collier's International. Any interested persons may obtain a copy of the appraisal by request to Debtor's counsel.

### D.   Status of Receiver

The Alameda County Action was filed on June 1, 2009. The Debtor agreed to the appointment of a receiver, and the receiver was appointed by the Court on June 24, 2009. The Debtor was managed by the receiver commencing in June 24, 2009, and continuing through the initial stages of the bankruptcy case (through December, 2010).

The Bankruptcy Court ruled on December 7, 2010, that the Debtor would be permitted to act as Debtor in Possession, and that the Receiver must comply with the turnover requirements of 11 U.S.C. § 543. The Receiver is in the process of turning over the records and assets to Debtor and the property manager that will be engaged by Debtor. The Court indicated that the receiver should present a final accounting and fee application to the Bankruptcy Court. Debtor understands that there may be an issue with respect to the delinquent payment of taxes that could result in a surcharge against the Receiver. Debtor understands that certain taxes were not timely paid despite the Debtor having adequate funds on hand to pay such taxes, and that as a result of the late payment the Debtor and estate have incurred significant penalties. This issue will be addressed in the final accounting proceedings.

### E.   Forbearance Agreement Between Cathay Bank and Redwood Mortgage

The judicial foreclosure action was resolved on an interim basis by an agreement between

Cathay Bank and Redwood Mortgage whereby Redwood Mortgage cured the arrearages owed to Cathay Bank and funded an interest reserve to assure payment of interest to Cathay Bank for a one-year period. The forbearance period expired in mid-2010 at which time Cathay Bank initiated further nonjudicial foreclosure actions and set a date for a trustee's sale.

**F.    Non-Judicial Foreclosures**

As is set forth above, during the pre-petition period there were two non-judicial foreclosures pending, one by Cathay Bank and one by Redwood Mortgage. The sales were set for October 4, 2010.

**G.    Redwood Plan Funding**

One of the components of the Plan involves funding by Redwood Mortgage. The funding will be used to pay specified claims in the bankruptcy case, and is defined as the Redwood Plan Funding. The Redwood Plan Funding shall mean the additional funding which Redwood Mortgage will provide to the Debtor and Reorganized Debtor in the following manner, and upon the following terms and conditions:

(a)    Redwood Mortgage will advance to the Reorganized Debtor up to the sum of one million dollars ($1,000,000) (the "Advance Funds") over thirty six (36) months from the Effective Date. The maximum amount of monthly advance shall be not more than forty thousand dollars ($40,000). The Advance Funds can only be used for (i) monthly interest only payments to Cathay Bank pursuant to the treatment of the claim of Cathay Bank as set forth in the Plan.; (ii) daily and ordinary repairs to the Property, subject to approval by Redwood Mortgage, which will not be unreasonably withheld; and (iii) third party leasing commissions, subject to approval by Redwood Mortgage, which will not be unreasonably withheld. In the event the Debtor exercises the option described in Section "I" of the Plan, then Redwood Mortgage will agree to enter into negotiations with the Reorganized Debtor to consider extending the terms and commitment under the Redwood Funding Plan for years 4 and 5 of the then term of

the Plan. However, Redwood Mortgage shall not be required to fund the Debtor's operations for years 4 and 5.

(b)     The amounts advanced by Redwood Mortgage in Paragraph (a) will be added to the allowed secured claim of Redwood Mortgage, and the principle amount of the secured claim of Redwood Mortgage will be increased by the amounts advanced pursuant to the Redwood Plan Funding. Interest will accrue under the loan documents and Redwood Mortgage waives default interest.

(c)     The amounts advanced pursuant to the Redwood Plan Funding will remain secured, in addition to all other amounts owing to Redwood Mortgage, by the Debtor's assets, including the Property, junior only to any outstanding property taxes (if any) and the claim of Cathay Bank. The parties do not believe any subordination agreement of junior liens is necessary, however to the extent that any subordination of the junior lien holders is necessary in order to secure the amounts funded pursuant to the Redwood Plan Funding, confirmation of this Plan shall constitute subordination of the claims of Class C-4 and C-5.

(d)     Redwood Mortgage will agree to advance funds pursuant to Paragraph (a) subject to the Debtor obtaining not less than 50% lease occupancy within 18 months of the Effective Date and 75% lease occupancy as of 36 months after the Effective Date.  In the event these target lease occupancy dates are not satisfied, Redwood shall have the discretion to discontinue the Redwood Plan Funding.

(e)     In consideration for the Redwood Plan Funding, Redwood Mortgage will be paid the following amounts from the sale of the Property.  After payment of any outstanding property taxes, the secured claims of Cathay Bank and Redwood Mortgage, then out of the remaining proceeds (the "Proceeds"),  Redwood shall be paid the following percentage of the Proceeds:  25% if the Property is sold within one year from the Effective Date; 50% of the Proceeds if the Property is sold at any time between one

year and one day after the Effective Date through and including the end of year three and then 75% of the Proceeds should a sale occur in years four and five after the Effective Date. In the event of a refinance, then Redwood Mortgage will be paid a sum calculated in accord with the foregoing, based on a hypothetical sale of the Property at its then appraised value.

(f)     At no time during the term of the reorganization, i.e., five years from the Effective Date, shall any payment(s) be made to the equity owners, unless and until the secured claims of Cathay Bank and Redwood Mortgage are paid in full or as otherwise agreed.

(g)     This arrangement is contingent on entry of a final order confirming the Plan

## IV.     DEBTOR'S CREDITORS AT PRESENT

### A.     Administrative Claims (Class A)

Debtor believes the only Class A administrative claim to be held by Cohen and Jacobson, LLP, as counsel for Debtor.  Debtor estimates that the administrative claim will be the sum of $100,000, however this figure is solely an estimate and could increase significantly in the event that contested confirmation proceedings are required.

### B.     Priority Claims (Class B)

There is currently one potential priority claim, with the Franchise Tax Board having filed a Proof of Claim in the priority amount of $6,114.16 for the tax period ending December 31, 2009.

### C.     Lien Claimants (Class C)

#### 1.     Real Property Tax Claims (Class C-1)

On December 17, 2010, the Alameda County Tax Collector filed three Proofs of Claim pertaining to property taxes (one claim for each of the three separate parcels).  The Proofs of Claim were filed as secured claims in the amounts of $105,956.94 (Parcel 32), $101,337.78 (Parcel 34), and $150,268.18 (Parcel 35).  Despite the filing of the Proofs of Claim, property taxes are current, and the attachments to the Proofs of Claim show that the claims were filed with respect to the installments due by December, 2010, and April, 2011.

The Receiver paid the December, 2010, installments, and the Plan provides for payment of the April, 2011, installment, and other future installments from Debtor's rental income. The Plan specifically provides that each month during the Term of the Plan Debtor will set aside 1/12 of the amount of property taxes owing such that funds will at all times be on hand for the timely payment of the property taxes. The amount of the installments (due by December and April on an annual basis) for each parcel are $52,978.47 (Parcel 32), $50,668.89 (Parcel 34), and $75,134.09 (Parcel 35). The total property taxes due each year is the sum of $357,562.90, and therefore the monthly set aside representing 1/12 of the property taxes is the sum of $29,796.91.

### 2. Cathay Bank/East West Bank (Class C-2)

The C-2 Claim pertains to the secured claim of Cathay Bank and East West Bank. This claim is owing in the principal amount of $22,300,000 in addition to any unpaid and accrued interest and other costs claimed by this claimant. The Plan provides a procedure for the determination of any costs beyond the principal balance. In sum, the parties are to attempt to amicably determine the allowed amount of claimed costs. If an agreement is not reached, the Class C-2 Claimant is to file a Statement of Claimed Costs which sets forth the legal basis for any additional amounts claimed to be owing. The Debtor, or any other real party in interest, can file an objection to the claimed amount. The Court will then determine the allowed amount of the costs which shall be added to the principal balance of the Class C-2 Claim.

### 3. Redwood Mortgage (Class C-3)

The Class C-3 Claim pertains to the secured claim of Redwood Mortgage. This claim is owing in the principal amount of $13,500,000, in addition to any unpaid and accrued interest and other costs claimed by this claimant. This claim will also include amounts funded by Redwood Mortgage pursuant to the Plan.

### 4. Sarabjit Hundal (Class C-4)

The Class C-4 Claim pertains to the secured claim of Sarabjit Hundal. This claim is owing in the principal amount of $1,000,000.

**5.      Gurdip Sekhon (Class C-5)**

The Class C-5 Claim pertains to the secured claim of Gurdip Sekhon.  This claim is owing in the principal amount of $1,000,000.

**D.      Unsecured Claims (Class D)**

The Class D Claims are comprised of unsecured claims.  The undisputed unsecured claims aggregate the sum of $1,264,297, with this amount calculated from Debtor's Schedule F (undisputed claims) and the Claims Register (for those creditors that are both listed on Schedule F and filed Proofs of Claim, the amount from the Proof of Claim was utilized in this calculation).

There exists one disputed unsecured creditor, Q&L, LLC, which is listed as disputed in Schedule F but filed a Proof of Claim in the amount of $264,643.84.  This creditor filed a pre-petition lawsuit which Debtor contested (the action was stayed by the filing of the bankruptcy case prior to the setting of any trial date).  The claim is based upon the claimant's assertion that it should be provided a refund of its security deposit which was tendered when the claimant agreed to lease a portion of the Property to operate a supermarket.  The claimant asserts, *inter alia*, that Debtor did not obtain the necessary permits for the completion of tenant improvements, and that the claimant therefore did not occupy the space such that the deposit should be refunded.  Debtor contends that it did perform the work necessary to obtain permits, and that the claimant opted on its own accord to not occupy the property.  Debtor and the claimant have engaged in discussions, through counsel, regarding the resolution of this issue.

For purposes of this Disclosure Statement Debtor will utilize the full amount of alleged unsecured claims, including the disputed claim, when calculating plan payments, which amount is $1,528,940.  However, Debtor reserves the right to object to any claim, including the Q&L claim.  The Plan provides that objections to claims shall be filed within 180 days of the Effective Date.

**E.      Claims of Members (Class E)**

The Class E Claims are the claims of members.

## V.    THE ESTATE'S ASSETS AT PRESENT

### A.    Summary of Assets Available to Pay Priority and Unsecured Claims

Debtor's assets are as follows:[2]

| ASSET | NAME OF LIENHOLDERS | Value |
|---|---|---|
| Bank Balances | Cathay Bank and Redwood Mortgage | $431,012.00 |
| Real Property | Cathay Bank, Redwood Mortgage, Sarabjit Hundal, and Gurdip Sekhon | $46,000,000.00[3] |
| Accounts Receivable (Delinquencies of Current Tenants) | None | $205,658.00[4] |
| Accounts Receivable (Delinquencies of Tenants that Have Been or Are Being Evicted) | None | $0.00[5] |
| **Total** | | **$46,636,670.00** |

In the opinion of Debtor's management, the value of the Debtor's assets, if sold on a liquidation basis by a trustee in a Chapter 7 case, would be the following:

---

[2] The sources of information for this compilation include Debtor's own records, the Schedules, and information provided by the Receiver.

[3] For this calculation Debtor is utilizing the minimum value as indicated in its most recent appraisal. The full value is likely in excess of this amount.

[4] These receivables are valued separately because the collectability from current tenants is greater than from evicted tenants. Several tenants have been making catch-up payments and/or have discussed payment plans with the Receiver.

[5] Debtor believes that the total amount of these claims is $12,700. However, the collectability of these accounts is doubtful given that the tenants were evicted based upon non-payment of rent.

Case: 10-60373    Doc# 67    Filed: 01/02/11    Entered: 01/02/11 13:59:13    Page 19 of 33

| ASSET | NAME OF LIENHOLDERS | Value |
|---|---|---|
| Bank Balances[6] | Cathay Bank and Redwood Mortgage | $200,000.00 |
| Real Property | Cathay Bank, Redwood Mortgage, Sarabjit Hundal, and Gurdip Sekhon | $37,800,000.00 [7] |
| Accounts Receivable (Delinquencies of Current Tenants) | None | $20,500.00 [8] |
| Accounts Receivable (Delinquencies of Tenants that Have Been or Are Being Evicted) | None | $0.00 |
| Total | | $38,020,500.00 |

**B.      Avoidance Actions**

Debtor reserves the right to file any potential avoidance or recovery actions pursuant to 11 USC §§ 541, 544, 547, 548, 549, 550, 551 or 553. Debtor's recovery in such action will be paid to creditors according to their priorities. Other than the potential objections to claims, and potential actions to recover delinquent rent, Debtor does not presently anticipate any other litigations.

**C.      Exempt Assets**

The Debtor is a limited liability company which has no exempt property.

---

[6] Debtor anticipates that, if its assets are being liquidated by a Trustee, the available cash would be decreased as a results of liquidation, including Trustee's fees, real estate agent fees, Trustee's professionals, and related expenses.

[7] Reflects distress forced sale valuation. For this purpose Debtor uses the amount of the aggregate liens.

[8] In the event that the Debtor's assets are liquidated, the likelihood that current delinquent tenants would remit the delinquencies to the Debtor is doubtful. Further, the right to these delinquencies might pass to the new owner if the property is sold, and the new owner may evict delinquent tenants (thereby further diminishing any possibility of collection). As such, these accounts are estimated at a 10% collectibility rate for liquidation purposes.

Case: 10-60373   Doc# 67   Filed: 01/02/11   Entered: 01/02/11 13:59:13   Page 20 of 33

# VI. PLAN

## A. Effective Date

The Effective Date is the last date on which an appeal from this Court's Order Confirming Plan would be timely or, if an appeal is filed, the day after the appeal becomes final.

## B. Treatment of Unclassified Claims

Debtor shall pay in full, in cash, any claims of governmental units entitled to priority under Bankruptcy Code Section 507(a)(8) which are less than $5,000. Any claims of governmental units entitled to priority under Bankruptcy Code Section 507(a)(8) which are more than $5,000 shall be paid in twenty four equal monthly installments, together with interest at the rate of six percent (6%) per annum.

## C. Treatment of Unimpaired Claims

Classes A, B, C-1 and E are unimpaired.

Class A claims will be paid in full, in cash, on the Effective Date, from cash on hand and/or Redwood Plan Funding, unless other treatment is agreed upon. If a claim is disputed, Debtor will set aside and reserve sufficient funds to satisfy the claim if subsequently allowed.

Class B claims will be paid be paid in full, in cash, on or prior to the due date for payment of such claims, from cash on hand and/or Redwood Plan Funding, unless other treatment is agreed upon.

The Class C-1 property taxes are current. Future property taxes will be paid on a current basis as they become due from rental income from the Property. Each month Debtor will set aside, as a monthly expense, 1/12 of the annual property taxes owing such that the Reorganized Debtor will have the funds to pay property taxes as they become due.

In the event that all claims are paid in full, Class E members, currently comprised of three members of Debtor, shall retain their interests without impairment.

## D. Treatment of Priority Claims

As set forth immediately above, Class B claims are unimpaired and will be paid on the

1   Effective Date.

2       **E.      Treatment the Class C-2 Claim**

3           Commencing on the Effective Date, Cathay Bank will receive monthly interest-only

4   payments from the Redwood Plan Funding.   Interest shall accrue on the principal balance of

5   $22,300,000 at the rate of 2% over the one-year LIBOR ("Cathay Interest Rate").  The Cathay

6   Interest Rate will be set as of the date of confirmation of the Plan, and shall be fixed through the

7   duration of the Term of the Plan.  The interest payments shall continue for a period of three (3)

8   years from the Effective Date.

9           The balance of the Class C-2 Claim shall be due and payable three years after the Effective

10  Date, with such payment to be made from the sale or refinance of the Property, or from

11  contributions from a member or new member.  Any sale, refinance, or contribution must comply

12  with the certain provisions discussed below.  The Debtor shall make the balloon payment

13  representing the balance of the Class C-2 Claim on or before the third anniversary of the Effective

14  Date.  The balloon payment shall include the principal balance and any allowed costs allowed by

15  the Court.  Any refinance or contribution must provide for full payment of the Class C-2 Claim.  If

16  the proceeds from any sale of the Property, after closing and related costs, are insufficient to pay

17  the full Class C-2 Claim, the C-2 Claim shall be paid from Debtor's remaining assets.

18          Any prepayment penalties under the prepetition loan documents evidencing the Class C-2

19  Claim shall be rendered null and void, and disallowed, on the Effective Date.  The Class C-2 Claim

20  is fully secured by the Property and shall retain its prepetition liens and security interests.

21          To the extent that the Class C-2 Claimant alleges any amounts owing other than the

22  principal balance, including any claims for unpaid interest, late fees, attorneys fees, or any other

23  claimed costs, the Debtor and Class C-2 Claimant are required to meet and confer in an effort to

24  agree upon the allowed amount of the Class C-2 Claim.  The parties shall meet and confer within

25  one week of the date upon which the Order Approving Debtor's Disclosure Statement is entered on

26  the docket.

In the event that the parties do not agree as to the amount of the costs claimed by Cathay Bank, then the amount of allowable costs shall be subject to determination by the Bankruptcy Court. Cathay Bank shall file a statement of claimed costs which sets forth the exact amount of costs being claimed as of the date of confirmation of the Plan, including any outstanding interest, attorneys' fees, or other alleged costs (the "Statement of Claimed Costs"). The Statement of Claimed Costs shall set forth the factual and legal basis for entitlement of such costs, and shall be filed with the Bankruptcy Court, and served upon Counsel for the Debtor and Redwood Mortgage either personally or by electronic mail, no later than 21 calendar days prior to the hearing on confirmation of the Plan. Debtor and Redwood Mortgage, or any party in interest, shall have the opportunity to present any opposition to the claimed costs by filing an opposition to the Statement of Claimed Costs no later than 7 calendar days prior to the hearing on confirmation of the Plan. Cathay Bank may file a response to any such objection no later than 2 calendar days prior to the hearing on confirmation of the Plan. The Bankruptcy Court shall then make its ruling on the amount of allowed costs, including reasonable attorneys fees, at the hearing on confirmation of the Plan. If the Class C-2 Claimant does not file a Statement of Claimed Costs then the Class C-2 Claim will be treated as provided herein based upon the undisputed amount of the Class C-2 Claim unless and until the Court determines that some greater amount is allowable. At such time as any additional costs are allowed, such amount shall be added to the Class C-2 Claim that will thereafter be treated accordingly.

In the event that no appeal is taken from the order approving confirmation of the Plan, the amount allowed by the Court as of the date of the confirmation hearing will be the amount of costs paid pursuant to the terms of this Plan. If an appeal is taken, Cathay Bank may file a supplemental Statement of Claimed Arrearages after the appeal becomes final, with the supplemental Statement of Claimed Arrearages set for hearing pursuant to the Court's law and motion procedures.

**F.     Treatment of the Class C-3 Claim**

The Class C-3 Claim will be treated pursuant to the terms of the Redwood Plan Funding,

Case: 10-60373    Doc# 67    Filed: 01/02/11    Entered: 01/02/11 13:59:13    Page 23 of
33

which are set forth above.

The Class C-3 Claim, including the principal balance, accrued costs, interest, and amounts funded pursuant to the Redwood Plan Funding, shall be due and payable three years after the Effective Date, with such payment to be made from the sale or refinance of the Property, or from contributions from a member or new member. Any sale, refinance, or contribution must comply with certain terms discussed below. The Debtor shall make the balloon payment representing the balance of the Class C-3 Claim on or before the third anniversary of the Effective Date.

Any refinance or contribution must provide for full payment of the Class C-3 Claim. If the proceeds from any sale of the Property, after closing and related costs, are insufficient to pay the full Class C-3 Claim, the C-3 Claim shall be paid from Debtor's remaining assets.

The amount of the allowed Class C-3 Claim, including any costs and attorneys fees, shall be determined by the Debtor and Redwood Mortgage in connection with the documentation of the Redwood Plan Funding.

Any prepayment penalties under the prepetition loan documents evidencing the Class C-3 Claim shall be rendered null and void, and disallowed, on the Effective Date.

## G.    Treatment of the Class C-4 and Class C-5 Claims

Unless the loan documents set forth a later date, the Class C-4 and Class C-5 Claims shall be due and payable three years after the Effective Date, unless the holder(s) of such claim(s) agree to extend such period, with such payment to be made from the sale or refinance of the Property, or from contributions from a member or new member. Any sale, refinance, or contribution must comply with the terms set forth herein. The Debtor shall make the balloon payment representing the balance of the Class C-4 and C-5 Claims on or before the third anniversary of the Effective Date. Any refinance or contribution must provide for full payment of the Class C-4 and Class C-5 Claims. If the proceeds from any sale, after closing and related costs, are insufficient to pay the full Class C-4 and Class C-5 Claims, the Class C-4 and Class C-5 Claims shall be paid from Debtor's remaining assets.

Case: 10-60373    Doc# 67    Filed: 01/02/11    Entered: 01/02/11 13:59:13    Page 24 of
33

The Class C-4 and Class C-5 Claims shall accrue interest at the contractual rate, and the Class C-4 and Class C-5 Claims are fully secured by the Property and shall retain their prepetition liens and security interests.

**H.      Treatment of Class D Claims**

Class D Claims will be paid three years from the Effective date from proceeds from the sale or refinance of the Property, or from contributions from a member or new member.  Any sale, refinance, or contribution must comply with certain terms discussed below.  Payments to Class D will be paid after all other claims holding priority according to the Bankruptcy Code are paid in full.

If Class D Allowed Claims are paid in full, claims within this category will be entitled to interest accrued at the Federal Rate in effect as of the Effective Date.  However, if the means for providing payment to Class D Claims are not sufficient for a 100% dividend, then Class D claims will not receive interest and the payment to Class D Claimants will be made on a pro-rata basis from available assets.  If Class D Allowed Claims are not paid in full, the portion of the unpaid balance of each Class D Allowed Claim shall be discharged.

**I.      Treatment of Class E Claims**

Class E members shall provide, without charge to the Reorganized Debtor, and with a waiver of all fees and commissions to which a provider of such services would otherwise reasonably expect to receive, all the services required for the consummation of this Plan, including without limitation the leasing and management services for the Property; engaging professionals for the design and construction of Tenant Improvements; engaging contractors and subcontractors to perform any tenant improvements; supervising the construction and completion of the tenant improvements; the procurement of permits necessary for sales or leasing; and assistance in the prosecution of all litigations contemplated by this Plan.  The obligations to be performed by the Class E members include all of the obligations to be performed by the Debtor under the terms of this Plan, and as otherwise required by the Bankruptcy Code, the Rules of Bankruptcy Procedure,

the Local Rules of the above entitled Court, the Guidelines of the Office of the United States Trustee.

The individuals who presently hold their membership interests shall retain those interests, subject to performance of such obligations as are required by the Plan.

In the event that all claims are not paid in full, the three members shall be required to make an aggregatge payment of $50,000 in order to retain their membership interests, with the payment to be made pursuant to the respective ownership interests, namely: Thomas Nguyen (8%), Joseph Nguyen (9%), and Tuyet Minh Le (83%). This additional capital shall be paid to claimants based upon the priority set forth in this Plan, and subject to overbid at a hearing set pursuant to the Bankruptcy Court's ordinary law and motion practices. By making an overbid, the person doing so thereby agrees to perform all of the obligations referenced herein. Any prospective bidder must serve notice of intent to overbid, and provide a statement of qualifications to perform the obligations of the Reorganized Debtor, by delivery of such notice and statement to the office of counsel for the Debtor, no later than five (5) court days prior to the noticed law and motion hearing.

### J.    Requirements Pertaining to the Sale of the Property, the Refinance of the Property, or a Contribution from A New or Existing Member

The Plan includes designated procedures for the sale of the Property, the refinance of the Property, and or contributions from new or existing members.

The Plan provides that the Debtor shall be authorized to sell the entire Property at any time during the Term of the Plan. Debtor may engage any qualified real estate broker to assist with the sale of the Property, however Debtor shall obtain Court approval of appointment of the broker by filing the appropriate application for appointment with the Court, and serving the application on Cathay Bank, Redwood Mortgage, and the Office of the United States Trustee. Provided that Court approval is obtained for appointment of the broker, the real estate broker may receive a reasonable commission from the sale of the Property, which commission shall conform with the

Case: 10-60373    Doc# 67    Filed: 01/02/11    Entered: 01/02/11 13:59:13    Page 26 of
33

industry standard.

The sale of the Property, or any portion thereof, shall require Court approval following a motion noticed to all creditors. In the event that a Final Decree is issued and the case closed prior to the sale of the Property, no order reopening the case shall be required in order for the Court to hear any motion for approval of the sale. The sale, and payment of costs of sale as customary in the industry, shall be approved if the terms of sale are fair and reasonable.

At any time Debtor may elect to pay claims by refinancing the Property or by obtaining a contribution from members or third parties. In the event that such election is made, Debtor shall not be required to sell the Property. Provided that the refinance and/or new contribution will result in full payment of all claims, no further Court order shall be required in order to permit the refinance of the Property, as confirmation of the Plan will constitute authority for the Debtor to refinance and pay all claims.

In the event that any refinance or new contribution will not result in payment of all claims, Court approval shall be required, and shall require the Reorganized Debtor to show a legitimate business reason for effectuating a refinance or obtaining a new contribution that will not pay all claims in full. In the event that a Final Decree is issued and the Bankruptcy Case closed prior to a refinancing of the Property or new contribution requiring Bankruptcy Court approval, no order reopening the Bankruptcy Case shall be required in order for the Court to hear any motion.

### K.    Manner of Funding of Plan

The manner of funding the plan is described above. In sum, Debtor will pay claims through a process of (a) the term-out of the Class C-1 Claim; (b) funding from the Redwood Plan Funding; (c) funding from the sale of the Property; (d) funding from the refinance of the Property; (e) funding from Net Profits generated from the continued leasing of the Property; (f) Litigation Proceeds; and/or (g) contribution from new or existing members.

### L.    Term of the Plan

The Term of the Plan is three years, with the Term of the Plan commencing on the

1 Effective Date.

2       The Term of the Plan may be extended beyond the initial three year term. At the

3 conclusion of the three year term, if Debtor is current in its interest payments on the C-2 Claim of

4 Cathay Bank, and is otherwise in compliance with the terms of this Plan, Debtor shall have the

5 option to automatically extend the Term of the Plan for an additional two year period. Debtor shall

6 make such election in writing and file a Notice of Election to Extend Term of Plan with the Court.

7 In the event that the term of the Plan is extended by Debtor's election, the Term of the Plan will be

8 four years. Any extension shall be conditioned upon the continued payment of interest to the Class

9 C-2 Claimant, and to the extent that such payments are to be funded by Redwood Mortgage, the

10 consent of Redwood Mortgage to any extension shall be required.

11       If an election is made to extend the Term of the Plan, after conclusion of the five year Term

12 of the Plan, if Debtor seeks a further extension of the Term of the Plan, the request for extension

13 shall require a motion showing that the interest payments on the Class C-2 Claim are current and

14 that there exists a legitimate business purpose for the extension. The business purpose may

15 include, but is not limited to, the need to complete the development of the Property, efforts to sell

16 or refinance the Property, or an increase in rental income such that Debtor is capable of

17 commencing payments to creditors without the need for sale or refinance. In the event that a Final

18 Decree is issued and the case closed prior to the sale of the Property, no order reopening the case

19 shall be required in order for the Court to hear any motion to extend the Term of the Plan.

20 **VII.    COMPARISON WITH CHAPTER 7**

21     **A.    Chapter 11 Reorganization and Chapter 7 Liquidation**
               **Alternatives**

22

23       If Debtor's proposed Chapter 11 Plan is not confirmed, the potential alternatives would

24 include proposal of a different plan, dismissal of the case, or conversion of the case to Chapter 7.

25 If this case is converted to Chapter 7, a trustee will be appointed to liquidate and distribute the

26 Debtor's assets.

## B.    Chapter 11 Distribution Scheme

In the event that Debtor's Chapter 11 Plan is confirmed, Debtor anticipates the following distribution to creditors (the analysis accounts for the full value of the assets being distributed by the end of the Plan):

| Classes of Claims | Claim Amounts | Diminishing Balances of Estate Funds | % Dividend |
|---|---|---|---|
| Beginning Balance | | $46,363,670 | |
| Class A | $100,000 | $46,263,670 | 100% |
| Class B | $6,114 | $46,257,556 | 100% |
| Class C-1 | $0[9] | $46,257,556 | 100% |
| Class C-2 | $22,300,000 | $23,957,556 | 100% |
| Class C-3 | $13,500,000 | $10,457,556 | 100% |
| Class C-4 | $1,000,000 | $9,457,556 | 100% |
| Class C-5 | $1,000,000 | $8,457,556 | 100% |
| Class D | $1,528,940 | $6,928,616 | 100% |
| Residual Balance to Debtor | | $6,928,616 | |

## C.    CHAPTER 7 DISTRIBUTION SCHEME

In the event that the case is converted to a Chapter 7 case, Debtor anticipates the following distribution:

| Classes of Claims | Claim Amounts | Diminishing Balances of Estate Funds | % Dividend |
|---|---|---|---|
| Beginning Balance | | $38,020,500 | |
| Class A | $100,000 | $37,920,500 | 100% |
| Class B | $6,114 | $37,914,386 | 100% |

---

[9] The Class C-1 Claim is current and will remain current during the Term of the Plan.  As such the claim will not be paid from Debtor's assets.

| Classes of Claims | Claim Amounts | Diminishing Balances of Estate Funds | % Dividend |
|---|---|---|---|
| Class C-1 | $0 | $37,914,386 | 100% |
| Class C-2 | $22,300,000 | $15,614,386 | 100% |
| Class C-3 | $13,500,000 | $2,114,386 | 100% |
| Class C-4 | $1,000,000 | $1,114,386 | 100% |
| Class C-5 | $1,000,000 | $114,386 | 100% |
| Class D | $1,528,940 | $0 | 7% |

## VIII. FEASIBILITY

The Plan is feasible based upon the value of the Property and other assets. Debtor estimates the *minimum* value of the Property to be $46,000,000, and based upon this valuation the assets of the estate exceed existing claims such that the Plan is undeniably feasible. This valuation does not even take into consideration the likely appreciation that will inure to the benefit of the estate during the Term of the Plan.

Further, feasibility is bolstered by the Redwood Plan Funding pursuant to which Redwood Mortgage will make designated payments under the Plan, in particular the interest payment to Cathay Bank. Redwood Mortgage and Cathay Bank entered into a similar arrangement pursuant to the prior forbearance agreement, so there is no issue regarding the ability of Redwood Mortgage to perform.

Additionally, the Property will continue to generate revenue to pay expenses as they come due, to pay property taxes, and to assist in making payments under the Plan. The income/expense calculation is as follows:

Current Income Average:     $96,603[10]

---

[10] This is the actual income over the past six month period, which is less than the contractual rent, and collection of the full contract rent will yield higher monthly income. Further, as indicated above, the current vacancies have an estimated market rent of $86,039.60, so the income figure will increase with new tenants.

| | | |
|---|---|---|
| 1 | Current Expense Average: | $20,142 |
| 2 | Property Tax Impound[11]: | $29,796 |
| 3 | Excess Amount: | $46,665 |

Based upon these projections, the Plan is feasible, and the improvement and rental of the Property will provide additional income and net profits.

**IX.     PROPOSED MANAGEMENT AND SALARIES AFTER CONFIRMATION**

Thomas Nguyen will remain the central manager of Debtor (subject to any overbidder succeeding to his obligations), and will continue to act as the Debtor's managing member after confirmation.   Thomas Nguyen will not receive a salary during the term of the Plan.  The Debtor will retain the services of the Property manager subject to periodic review as to the cost efficiency of retaining the property manager.

**X.     EXECUTORY CONTRACTS**

The leases with the Tenants shall be assumed upon the Effective Date.  The leases include the following: Mark's Oak Furniture, Furniture Showcase #1, Room Decore Furniture, Furniture and Mattress Gallery, Demaray's Gymnastics, Newwest Furniture (unless evicted in which case this lease is not assumed), Thuan Do-Elegant Furniture, Furniture Depot, Vu Minh Nguyen, Parrish Fremont Partners, Jesus Alfaro/Torres Pallets,  Furniture Showcase #2, Rugs on Sale, World Gourmet, V Star Bookstore, and Action Movers.

**XI.     LITIGATION**

The Plan provides that Debtor specifically reserves all litigation claims, including the claims against current or former Tenants based upon the failure to pay rent.  These claims currently include delinquencies owing by Mark's Oak Furniture, Furniture Showcase #1 and #2, Room Decore Furniture, Demaray's Gym, Newwest Furniture, Thuan Do, Furniture Depot, Factory Furniture Outlet, TNDT, Inc, Statement Furniture, Rugs on Sale, World Gourmet, and evicted tenants.  This provision also includes potential objections to claims.  The Plan provides that the

---

[11] This amount is 1/12 of the annual property taxes which will be set aside on a monthly basis.

Bankruptcy Court retains jurisdiction as to these matters. Counsel for the Debtor may initiate any litigations without the need for further appointment by the Bankruptcy Court, or Debtor can engage special counsel to pursue any litigations. In the event that special counsel is engaged, Debtor shall file the necessary application(s) for appointment with the Bankruptcy Court.

## XII.    MISCELLANEOUS

If any provision of the Plan is determined to be unenforceable, the determination will not limit or affect the enforceability and operative effect of any other provisions of the Plan.

On the Effective Date, and except as otherwise expressly provided in the Plan or in connection with its enforcement, all persons who have held, hold or may hold claims against the Debtor and/or the estate that arose before the Effective Date are permanently enjoined from (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtor or any property of Debtor or the estate, with respect to any such claim, (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtor, any property of Debtor or the estate, with respect to any such claim, (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtor, any property of the Debtor or the estate, with respect to any such claim, and (d) asserting, directly or indirectly, any setoff, or right of subrogation of any kind against any obligation due the Debtor or any property of the Debtor or the estate, with respect to any such Claim.

Any ballot that is executed by a creditor entitled to vote to accept or reject the Plan, but which indicates neither acceptance nor rejection, will be deemed an acceptance of the Plan. Any ballot that does not comply with the filing instructions on the ballot will not be counted for voting purposes.

To the extent that rental income constitutes cash collateral subject to any lien of the Class C-2, C-3, C-4, and/or C-5 Claimant, Debtor shall be authorized to utilize cash collateral to make payments contemplated by the Plan and to pay monthly operating expenses. Debtor shall also be

Case: 10-60373    Doc# 67    Filed: 01/02/11    Entered: 01/02/11 13:59:13    Page 32 of 33

1   authorized to pay post petition property taxes as they come due from cash collateral.

2       The Plan contains other provisions as are set forth in the text of the Plan.

3   **XIII.  CONCLUSION**

4       Debtor urges that the Plan will provide a means for payment to creditors, will likely result

5   in the fullest potential dividend to creditors, and will permit the reorganized debtor to continue as

6   an ongoing entity after completion of the bankruptcy case.

7   **XIV.   CERTIFICATION**

8       The undersigned hereby certifies that the information herein is true and correct, to the best

9   of my knowledge and belief, formed after reasonable inquiry.

10  Dated: December 30, 2010                      SAIGON VILLAGE, LLC

11                                                By:  /s/   Thomas Nguyen
                                                      Thomas Nguyen
12                                                    Responsible Individual

13
    Dated: December 30, 2010                      COHEN AND JACOBSON, LLP
14

15                                                By:   /s/   Lawrence A. Jacobson
                                                       Lawrence A. Jacobson
16

17

18

19

20

21

22

23

24

25

26

**DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT**
**OF CHAPTER 11 PLAN OF REORGANIZATION**                    -30-