Michael Gerard Fletcher (State Bar No. 070849)
mfletcher@frandzel.com
Bernard R. Given II (State Bar No. 134718)
bgiven@frandzel.com
Joy E. Mason (State Bar No. 215056)
jmason@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Secured Creditor Cathay Bank

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re | Bk. Case No.: 10-60373 |
| CHINA VILLAGE, LLC, | Chapter 11 |
| Debtor. | Honorable Arthur S. Weissbrodt |
| | **Hearing Date:**<br>Date: February 18, 2011<br>Time: 2:00 p.m.<br>Ctrm: 3020<br>280 South First Street, Third Floor<br>San Jose, CA 95113 |

## CATHAY BANK'S OBJECTION TO ADEQUACY OF DEBTOR'S DISCLOSURE

## STATEMENT IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION

804792.1 | 023000-0724

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................1

    A.   The Cathay Loan and Default .................................................................1

    B.   The State Court Proceedings and the Appointment of the Receiver.........3

    C.   Procedural History .................................................................................3

III.   ARGUMENT .......................................................................................................4

    A.   The Disclosure Statement Does Not Contain Adequate Information .......4

    B.   The Content of the Disclosure Statement ...............................................6

    C.   The Plan Cannot be Confirmed...............................................................7

    D.   The Plan is not Feasible as Required by 11 U.S.C. § 1129(a)(11) ...........7

    E.   The Plan is not Fair and Equitable .........................................................9

        1.   This Negative Amortization Plan Should Not Be Confirmed ......9

        2.   The Plan Does Not Provide the "Indubitable Equivalent" of the Bank's Claim. ...................................................................12

        3.   The Plan Cannot Satisfy § 1129(b)(2)(A)(iii)...........................15

    F.   The Plan Violates the Absolute Priority Rule .......................................15

IV.   CONCLUSION..................................................................................................16

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

804792.1 | 023000-0724

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Arnold & Baker Farms v. United States ex. rel. United States Farmers Home Admin.*
  *(In re Arnold & Baker Farms),*
  85 F.3d 1415 (9th Cir. 1996) ............................................................... 9, 15

*Great Western Bank v. Sierra Woods Group,*
  953 F.2d 1174 (9th Cir. 1992) ............................................................. 9, 10

*H & M Parmely Farms v. Farmers Home Admin.,*
  127 B.R. 644 (D.S.D. 1990) ..................................................................... 14

*In re 266 Washington Assocs.,*
  141 B.R. 275, *affirmed at* 147 B.R. 827 (E.D. N.Y. 1992) ...................... 5, 7

*In re 641 Assocs., Ltd.,*
  140 B.R. 619 (Bankr. E.D. Pa. 1992) ......................................................... 10

*In re A Partners, LLC,*
  344 B.R. 114 (Bankr. E.D. Cal. 2006) ......................................................... 8

*In re Apple Tree Partners, L.P.,*
  131 B.R. 380 (Bankr. W.D. Tenn. 1991) ................................................... 10

*In re Arnold,*
  806 F.2d 937 (9th Cir. 1986) ..................................................................... 13

*In re Cal. Fid., Inc.,*
  198 B.R. 567 (B.A.P. 9th Cir. 1996) ............................................................ 4

*In re California Hancock, Inc.,*
  88 B.R. 226 (B.A.P. 9th Cir. 1988) ........................................................... 14

*In re Calvanese,*
  169 B.R. 104 (Bankr. E.D. Pa. 1994) ...................................................... 8, 12

*In re Cardinal Congregate I,*
  121 B.R. 760 (Bankr. S.D. Ohio 1990) ..................................................... 5, 7

*In re Century Inv. Fund VIII Ltd. Partnership,*
  114 B.R. 1003 (Bankr. E.D. Wis. 1990) ................................................... 5, 7

*In re Consolidated Props. Limited P'ship,*
  170 B.R. 93 (Bankr. D. Md. 1994) ........................................................... 9, 10

*In re County of Orange,*
  219 B.R. 543 (Bankr. C.D. Cal. 1997) ........................................................ 4

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

Case: 10-60373    Doc# 75    Filed: 03/11/11    Entered: 03/11/11 16:23:46    Page 3 of 21

*In re Felix, Inc.*,
 116 B.R. 37 (Bankr. S.D.N.Y. 1990) ................................................... 5, 7

*In re Ferretti*,
 128 B.R. 16 (Bankr. D.N.H. 1991) ....................................................... 4, 5

*In re Georgetown Park Apartments*,
 103 B.R. 248 (Bankr. S.D. Cal. 1989) ............................................... 13, 14

*In re Haardt*,
 65 B.R. 697 (Bankr. E.D. Pa. 1986) ......................................................... 8

*In Re Harpley*,
 44 B.R. 151 (Bankr. N.D.Ohio. 1984) ..................................................... 6

*In re Hoffman*,
 52 B.R. 212 (Bankr. N.D. 1985) ............................................................... 8

*In re Howard*,
 212 B.R. 864 (Bankr. E.D. Tenn. 1997) ............................................. 10, 11

*In re Made in Detroit, Inc.*,
 299 B.R. 170 (Bankr. E.D. Mich. 2003) .................................................. 8

*In re Malek*,
 35 B.R. 443 (Bankr. E.D. Mich. 1983) ..................................................... 5

*In re Market Square Inn Inc.*,
 163 B.R. 64 (Bankr. W.D. Pa. 1994) ..................................................... 5, 7

*In re Memphis*,
 99 B.R. 385 (Bankr. M.D. Tenn. 1989) .................................................... 9

*In re Monarch Beach Venture, Ltd.*,
 166 B.R. 428 (C.D. Cal. 1993) ........................................................... 14, 15

*In re Murel Holding Corp.*,
 75 F.2d 941 (2d Cir. 1935) ..................................................................... 15

*In re Oaks Partners, Ltd.*,
 141 B.R. 453 (Bankr. N.D. Ga. 1992) .................................................... 10

*In re Ralph C. Tyler, P.E., P.S., Inc.*,
 156 B.R. 995 (Bankr. N.D. Ohio 1993) .................................................... 8

*In re Realty Invest., Ltd. V*,
 72 B.R. 143 (Bankr. C.D. Cal. 1987) ...................................................... 14

*In re Stratford Assocs. Ltd. P'ship*,
 145 B.R. 689 (Bankr. D. Kan. 1992) ......................................................... 8

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

*In re Swiftco, Inc.*,
  1988 Bankr. LEXIS 2251 (Bankr. S.D. Tex. 1988) ........................................................ 14

*In re Trans Max*,
  349 BR 80 (Bankr. Nevada 2006) .................................................................................. 6

*In re United States Brass Corp.*,
  194 B.R. 420 (E.D.Tx. 1999) ......................................................................................... 5

*In re Walker*,
  165 B.R. 994 (E.D. Va. 1994) ........................................................................................ 8

*In Re Wead*,
  38 BR 658,661 (Bankr. N.D.Mich. 1983) ....................................................................... 6

*In re Western Real Estate Fund, Inc.*,
  75 B.R. 580 (Bankr. W.D. Okla. 1987) ......................................................................... 14

*In re Wynnefield Manor Assocs., L.P.*,
  163 B.R. 53 (Bankr. E.D. Pa. 1993) ....................................................................... 10, 12

*In re: Miami Center Associates, Ltd.*
  144 B.R. 937 (S.D. Fla. 1992) ..................................................................................... 15

*Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) ................................. 4

*Pizza of Hawaii v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*,
  761 F.2d 1374 ................................................................................................................ 7

*Ryans Operations G.P. v. Santian-Midwest Lumber Co.*,
  81 F.3d 355 (3rd Cir. 1996) ........................................................................................... 4

**FEDERAL STATUTES**

11 U.S.C. § 543 ......................................................................................................... 1, 3

11 U.S.C. § 1125 ............................................................................................................ 5

11 U.S.C. § 1125(a) ....................................................................................................... 5

11 U.S.C. § 1125(a)(1) ................................................................................................... 4

11 U.S.C. § 1129(a)(11) ................................................................................................. 7

11 U.S.C. § 1129(b)(2)(A)(i) ........................................................................................ 12

11 U.S.C. § 1129(b)(2)(A)(iii) .................................................................................. 12, 15

**OTHER AUTHORITIES**

Colliers on Bankruptcy § 1125.02[2] .............................................................................. 5

804792.1 | 023000-0724

iv

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    Cathay Bank (the "Bank"), a secured creditor in the Chapter 11 case of China Village, LLC

2  (the "Debtor") submits this Objection ("Objection") to the Adequacy of the Debtor's Disclosure

3  Statement (the "Disclosure Statement") in support of Chapter 11 Plan of Reorganization (the

4  "Plan"), as follows:

5                                                    **I.**

6                                          **INTRODUCTION**

7        During this case, almost nothing has happened and this case is languishing.   The only

8  events of note were the Bank's motions for relief from the automatic stay to keep the court-

9  appointed receiver in place, and request for receiver's excusal from compliance with the turnover

10  requirements of 11 U.S.C. § 543.  The instant bankruptcy case was filed for no other purpose than

11  for the benefit of the Debtor's junior lender – Redwood Mortgage – as is evidenced by the Plan.

12  The only action of the Debtor was to file the Plan and Disclosure Statement to beat the 90 day

13  deadline to do so and avoid the Bank re-filing a Motion for relief from the automatic stay.   The

14  Debtor has not made a single adequate protection payment to the Bank during the course of this

15  case and has operated for the sole benefit of Redwood, not the estate as a whole.   Despite the

16  suggestion of the Debtor, there is no equity in the Shopping Center (as defined herein),

17  particularly given the extensive repairs needed.  In or about July 2010, the Bank commissioned

18  CB Richard Ellis to conduct an appraisal of the Collateral.  The appraisal determined the "as-is"

19  value of the Collateral to be $18,000,000 as of July 9, 2010.   A true and correct copy of the

20  appraisal is attached hereto as Exhibit "1".

21        As discussed below, the Bank requests that the Court not approve the Disclosure Statement

22  because it is inadequate as a matter of law and because the Disclosure Statements requests the

23  Court to confirm a Plan which is not capable of confirmation.

24                                                   **II.**

25                                          **BACKGROUND**

26  **A.    The Cathay Loan and Default**

27        The Debtor claims an ownership interest in the real property consisting of approximately

28  452,334 square feet of rentable space in a multi-building, "big-box," Asian-themed shopping

804792.1 | 023000-0724

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

center commonly known as 40505 Albrae Street, 40517 Albrae Street, 40525 Albrae Street, 5950 Stevenson Boulevard, and 6000 Stevenson Boulevard, Fremont, California 92506, and all of its concomitant buildings, fixtures, improvements, easements, *etc.*, and the personal property consisting of all equipment, fixtures and other articles of personal property (the "Shopping Center").

For value received, on or about August 12, 2005, Debtor executed and delivered to Bank a Business Loan Agreement (the "Loan Agreement") pursuant to which Bank agreed to loan Debtor the sum of $22,300,000.00. In connection with the Loan Agreement, on or about August 12, 2005, the Debtor executed and delivered to the Bank a Promissory Note ("Note") in the sum of $3,000,000.00.

To secure repayment of the obligation evidenced by the Note, the Debtor executed and delivered to the Bank a Deed of Trust dated January 12, 2007 ("Deed of Trust"), pursuant to which, among other things, the Debtor irrevocably granted all of its right, title and interest, including all interest in the Rents (as defined therein), to the following real property:

> PARCELS 1, 3 AND 4, PARCEL MAP 6695, FILED FEBRUARY 25, 1998, IN BOOK 234 OF PARCEL MAPS, PAGES 51 THROUGH 53, INCLUSIVE, ALAMEDA COUNTY RECORDS,

commonly known as APN 531-0240-032, APN 531-0240-034, and APN 531-0240-035.

Pursuant to the terms of the Note, Debtor agreed to pay the principal sum in one payment of all outstanding principal plus all accrued interest on August 16, 2007 (the "Original Maturity Date"), and to make regular monthly payments of all accrued unpaid interest due as of each payment date, beginning September 16, 2005, with all subsequent interest payments to be due on the same day of each month after that. Pursuant to the terms of the Cathay Note, interest accrues at the rate of the sum of the published Wall Street Journal Prime Rate (the "Index") plus 0.750 percentage points (the "Non-Default Rate"). The Note further provides that in the event of a default under the terms of the Note, interest shall increase to the sum of the published Wall Street Journal Prime Rate (the "Index") plus 5.750 percentage points (the "Default Rate"). The Note further provides that if any payment is late by 11 days or more, Debtor is obligated to pay a late fee of 5% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

804792.1 | 023000-0724

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   The Loan Agreement, Note, and Deed of Trust, and the subsequent modification documents

2   thereto  are collectively referred to as the "Loan Documents."

3       The Debtor defaulted under the terms of the Loan Documents by failing to make the

4   required payment of principal and interest in accordance with the terms of the Note, as modified,

5   on January 5, 2009.

6   **B.     The State Court Proceedings and the Appointment of the Receiver**

7       The Bank instituted an action against the Debtor on June 1, 2009 entitled *Cathay Bank v.*

8   *China Village, et al.*, Superior Court of California, County of Alameda (the "State Court"), Case

9   No. HG 09455257 (the "State Court Action").   After initiating the action, the Bank requested the

10  appointment of a receiver over the Shopping Center.   The State Court ordered the appointment of

11  the receiver on June 24, 2009, by which order Robb Evans & Associates, LLC (the "Receiver")

12  was appointed as Receiver.

13      From about June, 2009 through shortly after the filing of the instant case, the Receiver was

14  in possession, custody and control of the Shopping Center and all of the improvements thereon,

15  managed the Shopping Center, and collected all rents, issues, profits and income from the

16  Shopping Center pursuant to the order governing the Receiver's appointment.

17  **C.     Procedural History**

18      The Debtor filed its voluntary petition for relief under Chapter 11 of the bankruptcy code

19  on October 4, 2010 (the "Petition Date").   Thereafter, Bank moved for entry of an order seeking to

20  excuse the Receiver's compliance with the turnover requirements of 11 U.S.C. § 543 and for relief

21  from stay to enable the Receiver to continue in the manner it had since its appointment.   At a

22  hearing on December 7, 2010, this Court ordered the Receiver to turn over possession and control

23  of the Collateral to the Debtor.

24      On January 2, 2011, exactly 90 days after the Petition Date, the Debtor filed its Plan and

25  Disclosure Statement.

26  ///

27  ///

28  ///

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

# III.

# <u>ARGUMENT</u>

## A.     <u>The Disclosure Statement Does Not Contain Adequate Information</u>

The Bank objects to the adequacy of the Debtor's Disclosure Statement and to the Plan. The Disclosure Statement does not contain adequate information as defined by 11 U.S.C. § 1125(a)(1). Adequate information "means information of a kind, and in sufficient detail, as far as reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor and any successor to the debtor, and a hypothetical investor typical of the holder of claims or interest in this case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement  provides adequate information, the Court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, the cost of providing additional information…" 11 U.S.C. § 1125(a)(1).

The purpose of the disclosure statement is "to give all creditors a source of information which allow them to make an informed choice regarding the approval or rejection of a plan." *In re Cal. Fid., Inc.*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996); *accord In re County of Orange*, 219 B.R. 543, 560 (Bankr. C.D. Cal. 1997).  Simply put, a disclosure statement must "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The adequacy of the disclosure statement is determined with respect to the circumstances of the particular plan of reorganization. *See Main Street AC, Inc.*, 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999). The Disclosure Statement is inadequate in several respects.

Creditors in the Bankruptcy Court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, thus the importance of full and honest disclosure cannot be overstated. *See Ryans Operations G.P. v. Santian-Midwest Lumber Co.*, 81 F.3d 355, 362 (3rd Cir. 1996). Many cases have long since held that where it is clear from

804792.1  |  023000-0724

Case: 10-60373     Doc# 75     Filed: 02/11/11     Entered: 02/11/11 16:23:44     Page 9 of 21

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    a disclosure statement that a plan of reorganization cannot be confirmed, there is no reason to

2    approve the adequacy of the disclosure statement and proceed with a confirmation of a plan that

3    will not be confirmed. *See e.g. In re Century Inv. Fund VIII Ltd. Partnership*, 114 B.R. 1003

4    (Bankr. E.D. Wis. 1990); *In re 266 Washington Assocs.*, 141 B.R. 275, 278, *affirmed at* 147 B.R.

5    827 (E.D. N.Y. 1992); *In re Market Square Inn Inc.*, 163 B.R. 64, 67 and 68 (Bankr. W.D. Pa.

6    1994); *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990): *In re Felix, Inc.*,

7    116 B.R. 37 (Bankr. S.D.N.Y. 1990)).   The Bank asserts that not only does the Disclosure

8    Statement fail to provide adequate information in accordance with 11 U.S.C. § 1125 but, for the

9    reasons set forth below, the Plan cannot be confirmed based on the information is contained in the

10   Disclosure Statement.

11        Courts, when discussing 11 U.S.C. § 1125(a), have highlighted nineteen factors to consider

12   when determining whether a disclosure statement contains adequate information.  The factors

13   include, but are not limited to: (i) background information as to the cause of the bankruptcy

14   petition, (ii) complete description, including valuation, of assets, (iii) information regarding the

15   future course for the company, (iv) source information for items provided, (v) the accounting

16   method employed with regard to the financial information, (vi) data, valuations, and projections to

17   assist the creditor in evaluating the plan, (vii) the collectability of accounts receivable, and (viii)

18   the anticipated future of the debtor. *In re United States Brass Corp.*, 194 B.R.  420 (E.D.Tx.

19   1999); Colliers on Bankruptcy §1125.02[2].  While a debtor may not be required to set forth each

20   factor, at a minimum, the disclosure statement should contain (i) a description of the business, (ii)

21   its history, (iii) financial information, (iv) a description of the plan, (v) facts respecting its

22   execution, (vi) a liquidation analysis,  (vii) identification of its management and its compensation,

23   and (viii) transactions with insiders. *In re Malek*, 35 B.R. 443 (Bankr.  E.D. Mich. 1983).  Put

24   simply, an unsecured creditor should be able to discern three things from a disclosure statement:

25   (i) what it will get, (ii) when it will get it, and (iii) the conditions precedent to distribution. *In re*

26   *Fretti*, 128 B.R.  16 (Bankr.  D.N.H. 1991).   Unfortunately, the Disclosure Statement suffers

27   from a lack of information and reflects a poorly thought out approach to the confirmation process

28   that calls into question the confirmability of the Plan.

804792.1  |  023000-0724
5

1    In addition, a disclosure statement that is based on speculation rather than the Debtor's

2  business history will not be approved. *In Re Wead*, 38 BR 658,661 (Bankr. N.D.Mich. 1983).

3  Similarly, in *In Re Harpley*, 44 B.R. 151, 155 (Bankr. N.D.Ohio. 1984), the Court found that a

4  disclosure statement "based on vague time tables" was "so speculative that no plan of

5  reorganization could be based on it." See also, *In re Trans Max*, 349 BR 80,92 (Bankr. Nevada

6  2006) ("debtor must offer more than speculation about the source of funding for the plan").

7  **B.    The Content of the Disclosure Statement**

8       The Disclosure Statement does not state how or when the Debtor intends to sell the

9  Shopping Center, what will happen if it fails to do so, or what will happen if the sale of the

10  Shopping Center fails to meet certain economic thresholds.

11       The Debtor never states what the Bank's allowed claim is or what it is projected to be.

12  Since the Debtor only attaches outdated appraisals to the Disclosure Statement, the Bank and the

13  creditors have no idea as to whether the Bank is over secured, under secured, what interest will be

14  accruing, whether the Debtor is allowing the Bank the "indubitable equivalent" of its matured loan

15  in the Plan, and the Disclosure Statement is wholly insufficient to describe the Bank's claim and

16  whether it is secured or unsecured and to what extent.  The Bank further contends that, given the

17  foregoing lack of information, the Bank does not know whether it will ever obtain the "indubitable

18  equivalent" in this 3, maybe 5 year Plan.  This is especially true since the Bank's loan is fully

19  matured and all due and payable and the Bank was at foreclosure sale when the Debtor filed its

20  bankruptcy petition.  Yet, the Disclosure Statement gives no reason or rationale for its treatment of

21  the Bank's claim.  Instead, the Debtor places the onus for the establishment of the Bank's claim on

22  the Bank for all amounts in excess of the principal balance.

23       · The Bank understands that the Debtor will use the Bank's cash collateral from the sale of

24  the Shopping Center, pay the Bank a fraction of the money it receives and ultimately pay the full

25  amount due within 5 years from the effective date of the Plan whereas all other creditors in the

26  case are being paid within 3 years of the effective date.  As discussed below, not only is that not

27  fair and equitable but clearly violates the absolute priority rule.

28  ///

804792.1  |  023000-0724

OBJECTION TO ADEQUACY OF DISCLOSURE STATEMENT
IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  The Disclosure Statement needs to attach a cash flow projection as an exhibit. The

2  Disclosure Statement describes an optimistic guess as to its average monthly income based upon

3  only a few months of collections. However, the lack of a cash flow projection calls into question

4  the feasibility of the Debtor's Plan.

5  The Debtor also fails to state if the Debtor has been attempting to sell the Shopping Center

6  and what efforts it intends to undertake to accomplish the sale of the Shopping Center and what its

7  marketing efforts have been. Without this information creditors do not know whether the three-

8  year sale time frame is realistic, whether the Debtor has been acting in good faith, or whether the

9  sale price, whatever it may be, is appropriate.

10  **C.** **The Plan Cannot be Confirmed**

11  Many cases have long since held that where it is clear from a disclosure statement that a

12  Plan of Reorganization cannot be confirmed, there is no reason to approve the adequacy of the

13  disclosure statement and proceed with a confirmation of a plan that will not be confirmed. See

14  e.g. *In re Century Inv. Fund VIII Ltd. Partnership*, 114 B.R. 1003 (Bankr. E.D. Wis. 1990); *In re*

15  *266 Washington Assocs.*, 141 B.R. 275, 278, affirmed at 147 B.R. 827 (E.D. N.Y. 1992); *In re*

16  *Market Square Inn Inc.*, 163 B.R. 64, 67 and 68 (Bankr. W.D. Pa. 1994); *In re Cardinal*

17  *Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990); *In re Felix, Inc.*, 116 B.R. 37 (Bankr.

18  S.D. N.Y. 1990). Bank asserts that the Plan cannot be confirmed based on the information

19  contained in the Disclosure Statement.

20  **D.** **The Plan is not Feasible as Required by 11 U.S.C. § 1129(a)(11)**

21  The Plan contains far too many contingencies to be realistic. A debtor must establish that

22  "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further

23  financial reorganization, of the debtor or any successor to the debtor under the plan, unless such

24  liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). "The purpose of

25  section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and

26  equity security holders more under a proposed plan than the debtor can possibly attain after

27  confirmation." *Pizza of Hawaii v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374,

28  ///

804792.1 | 023000-0724

7

FRANTZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11] at 1129-34 (15th ed. 1984));

2   *see also In re A Partners, LLC*, 344 B.R. 114, 126 (Bankr. E.D. Cal. 2006).

3        Bankruptcy courts routinely reject chapter 11 plans that hold creditors in abeyance without

4   payment while the debtor attempts to sell real estate or obtain financing, which the debtor was

5   previously unable to do. *See, e.g., In re Calvanese*, 169 B.R. 104, 107-8 (Bankr. E.D. Pa. 1994)

6   (collecting cases and rejecting a plan that allowed the debtor six months to sell real property); *In*

7   *re Haardt*, 65 B.R. 697, 700-02 (Bankr. E.D. Pa. 1986) (rejecting a plan providing the debtor with

8   120 days to obtain refinancing which the debtor had been unable to do for 2 years). "[S]uch plans

9   are nothing more than speculative ventures which place all the risk on the respective secured

10  creditors, and, therefore, are not feasible." *In re Calvanese*, 169 B.R. at 107-108 (internal citations

11  omitted).

12       Similarly, bankruptcy courts have rejected plans that lack firm commitments of the sales or

13  financing necessary to fund the plan and repay creditors. *See, e.g., In re Ralph C. Tyler, P.E.,*

14  *P.S., Inc.*, 156 B.R. 995, 997 (Bankr. N.D. Ohio 1993) (holding that a plan is not feasible "without

15  a firm commitment of financing…"); *In re Made in Detroit, Inc.*, 299 B.R. 170, 176-177 (Bankr.

16  E.D. Mich. 2003) (rejecting a plan contingent on exit financing that was not reasonably likely to

17  close); *In re Walker,* 165 B.R. 994, 1005 (E.D. Va. 1994) (rejecting a plan to be funded through

18  the sale of real property because the plan failed to provide specifics regarding the proposed sale);

19  *In re Hoffman*, 52 B.R. 212, 215 (Bankr. N.D. 1985) (finding that 1129(a)(11) was not satisfied

20  because the proposed sale was not "sufficiently concrete" to assure consummation within the time

21  specified in the plan); *In re Stratford Assocs. Ltd. P'ship*, 145 B.R. 689, 699 (Bankr. D. Kan. 1992)

22  ("[W]ithout proper funding in place or a firm commitment of such funding, the Court cannot find

23  the plan feasible.").

24       At this point, and without the information set forth above, the Plan is nothing more than a

25  visionary scheme. The Plan is premised upon the Debtor successfully selling the Property at a

26  price it has been unable to do thus far. But neither the Disclosure Statement nor the Plan describe

27  precisely when the Property will be sold; and how much the Debtor expects to earn from the sale

28  of the Property. Nor did the Debtor provide an evidentiary basis for its prospective of the

804792.1 | 023000-0724

8

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1   Property. Certainly, neither a 2008 or 2009 appraisal can form the basis of today's value where the

2   Debtor cannot sell the Shopping Center. Without such information, how can creditors even vote?

3   The Debtor has no real concrete business plan.

4   **E.      The Plan is not Fair and Equitable**

5         The Plan is not fair and equitable because the Bank bears the burden of plan failure. The

6   fair and equitable provisions in Title 11 prohibit debtors from unfairly shifting the risk of plan

7   failure to the creditor. *Arnold & Baker Farms v. United States ex. rel. United States Farmers*

8   *Home Admin. (In re Arnold & Baker Farms)*, 85 F.3d 1415, 1422 (9th Cir. 1996). The Plan is not

9   fair and equitable because the Plan could potentially result in negatively amortizing the Bank's

10  debt and because the Plan does not provide for the indubitable equivalent of the Bank's claim.

11        **1.      This Negative Amortization Plan Should Not Be Confirmed**

12        The Bank holds a claim of over $22,300,000.00 at this time. The Bank's claim matured

13  pre-petition. Yet, despite proposing to make payments on the claim, the Debtor does not offer to

14  fully satisfy the claim for three to five more years. In the interim, all other creditors will be paid in

15  full within three years. Thus, during the life of the Plan, the Bank's claim could grow to the point

16  of negatively amortizing the Bank's claim.

17        Negative amortization refers to "a provision wherein part or all of the interest on a secured

18  claim is not paid currently but instead is deferred and allowed to accrue," with the accrued interest

19  added to the principal and paid when income is higher. The extent of negative amortization

20  depends upon the difference between the "accrual rate," or the overall rate of interest to be paid on

21  a claim, and the "pay rate," or the rate of interest to be paid on a monthly basis. *Great Western*

22  *Bank v. Sierra Woods Group*, 953 F.2d 1174, 1176 (9th Cir. 1992) (internal citations omitted).

23        Bankruptcy courts strongly disfavor negative amortization plans because they "tend to be

24  fraught with pitfalls that unfairly endanger creditors." *Id.* at 1177. Moreover, negative

25  amortization plans can be "extremely unfair and inequitable" to secured creditors because they

26  will not recover the present value of their claims, as required by the Bankruptcy Code, should the

27  plan fail. *See In re Consolidated Props. Limited P'ship*, 170 B.R. 93, 99 (Bankr. D. Md. 1994);

28  *see also In re Memphis*, 99 B.R. 385, 388 (Bankr. M.D. Tenn. 1989). For these reasons, negative

804792.1 | 023000-0724                                          9

amortization plans are carefully scrutinized and rarely confirmed. *See In re Oaks Partners, Ltd.*, 141 B.R. 453, 457 (Bankr. N.D. Ga. 1992); *In re Consolidated Props. Ltd. P'ship*, 170 B.R. 93, 99 (Bankr. D. Md. 1994); *In re Howard*, 212 B.R. 864, 877 (Bankr. E.D. Tenn. 1997); *In re 641 Assocs., Ltd.*, 140 B.R. 619, 630 (Bankr. E.D. Pa. 1992); *In re Wynnefield Manor Assocs., L.P.*, 163 B.R. 53, 59 (Bankr. E.D. Pa. 1993).

The fairness of negative amortization plans is determined on a case-by-case basis. *See Great Western Bank*, 953 F.2d at 1177-78. In making this determination, a bankruptcy court may consider the following factors:

    1.    Does the plan offer a market rate of interest and present value of the deferred payments;

    2.    Is the amount and length of the proposed deferral reasonable;

    3.    Is the ratio of debt to value satisfactory throughout the plan;

    4.    Are the debtor's financial projections reasonable and sufficiently proven, or is the plan feasible;

    5.    What is the nature of the collateral, and is the value of the collateral appreciating, depreciating, or stable;

    6.    Are the risks unduly shifted to the creditor;

    7.    Are the risks borne by one secured creditor or class of secured creditors;

    8.    Does the plan preclude the secured creditor's foreclosure;

    9.    Did the original loan terms provide for negative amortization; and

    10.    Are there adequate safeguards to protect the secured creditor against plan failure.

*Id.* at 1178 (quoting *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 398 (Bankr. W.D. Tenn. 1991)). However, "these factors should not be considered alone and may have different weights in different contexts." *In re 641 Assocs., Ltd.*, 140 B.R. 619, 631 (Bankr. E.D. Pa. 1992); *see also Great Western Bank*, 953 F.2d at 1178.

Here, the majority of the relevant factors demonstrate that the Plan cannot be confirmed. <u>First</u>, the length and amount of the proposed deferral is unreasonable. The Debtor seeks to extend a fully matured loan where the Bank was at its foreclosure sale when the Petition was filed for an

///

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

804792.1 | 023000-0724

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1 additional three-five years even though it fully matured pre-petition. The Debtor was also in

2 default for months pre-petition. An extension of three or more years is grossly unreasonable.

3     Second, the Debtor's valuation of the Property is based largely on 2008 and 2009

4 appraisals. The purported 2010 appraisal is not even attached to the Disclosure Statement and has

5 not been presented to this Court or the creditors of this estate. Those values do not exist in today's

6 market. The Bank's appraisal of $18 million is more in line with the current economic realities.

7 Even if there is equity, it would be quickly eroded by the accrual of interest on the Bank's claim

8 along with the other claims whatever they may be.

9     Third, the Plan is not feasible. As discussed above, there is no reason to believe the Debtor

10 can make the payments during the time frame in the Plan. The Debtor has been unable to do so to

11 date and there is no evidence that the Reorganized Debtor shall be able to do so in the future.

12     Fourth, the value of the Bank's collateral is unstable. The collateral consists of real estate.

13 In the present market, real estate values have plummeted precipitously. There is no indication that

14 they have picked up or will pick up in the immediate future. The inherently risky and unstable

15 nature of the Debtor's assets supports a finding that the proposed negative amortization is not fair

16 and equitable. *See In re Howard*, 212 B.R. 864, 878 (Bankr. E.D. Tenn. 1997) (rejecting a

17 negative amortization plan where the nature of the secured creditor's collateral was "inherently

18 risky and unstable" and there were no safeguards to guarantee that the secured creditor would

19 "receive the present value of its collateral in the event of plan default.").

20     Fifth, the risks of this case are unduly being borne by one creditor, the Bank. The Bank is

21 purportedly over-secured according to the Debtor, but the Plan does not provide for adequate

22 protection or even the accrual of interest on the Bank's claim at the default contract rates. The

23 Disclosure Statement goes to great lengths to impose a burden on Bank by establishing a

24 mechanism for Statement of Claimed Costs. Curiously, no other secured creditor bears such a

25 burden. The Bank is financing this case and will not even be paid in full before any other creditor.

26 Therefore, the risks of the Plan are unduly shifted to and are borne by the Bank.

27     Sixth, the Plan does not provide adequate safeguards to protect the Bank against plan

28 failure. The Plan does not allow creditors to seek dismissal or conversion of the case should the

804792.1 | 023000-0724

FRANZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1    Reorganized Debtor fail. It is unacceptable that after years in a "single asset real estate case," the

2    Reorganized Debtor can default and the Bank will be no closer to repayment or foreclosure. In

3    fact, as the debt negatively amortizes, the Bank is in a worse position. *See In re Calvanese*, 169

4    B.R. at 112, *see also In re Wynnefield*, 163 B.R. 53, 61 (Bankr. E.D. Pa. 1993) (rejecting a plan

5    that contained nothing which protected the secured creditor in the event it failed). At a <u>*minimum*</u>,

6    the Bank should be granted immediate relief from stay and permitted to foreclose without

7    opposition should the Reorganized Debtor fail. *See, e.g., In re Calvanese*, 169 B.R. at 112

8    (suggesting a deed in lieu of foreclosure or a friendly foreclosure).

9       Courts are in agreement that negative amortization plans should be carefully scrutinized

10    and *rarely approved*. This "single asset real estate case" involving partially developed land is

11    hardly the exceptional case justifying negative amortization. The Debtor expects the Bank to wait

12    for at least three, and up to five, years with less than full payments while it attempts to obtain the

13    cash necessary to pay the Bank which it has been unable to do to date and which is not reasonably

14    likely to occur in the near future. Moreover, the Plan fails to provide for the appropriate accrual of

15    interest on the Bank's claim and adequate safeguards should the Plan fail. Accordingly, the

16    negative amortization proposed in the Plan is not fair and equitable.

17       **2.**      **The Plan Does Not Provide the "Indubitable Equivalent" of the Bank's Claim.**

18       The Plan does not meet the requirements of 11 U.S.C. § 1129(b)(2)(A)(i) or (ii).

19    Accordingly, the only theory under which the Debtor may proceed to cram down the Bank's claim

20    is under 11 U.S.C. § 1129(b)(2)(A)(iii)—the indubitable equivalence prong. Still, close scrutiny

21    reveals the Debtor cannot satisfy § 1129(b)(2)(A)(iii) either.

22       Section 1129(b)(2)(A)(i) is inapplicable. With respect to secured claims, 11 U.S.C. §

23    1129(b)(2)(A)(i) provides:

24
25          (I) that the <u>holders of such claims retain the liens securing such claims</u>, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

26
27          (II) that <u>each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim</u>, of a value, as of the effective date of the plan,

28

---

804792.1 | 023000-0724            12

OBJECTION TO ADEQUACY OF DISCLOSURE STATEMENT
IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1      of at least the value of such holder's interest in the estate's interest in

2      such property…

3  The Plan does not satisfy subsection (II) because informational defects of the timing and

4  magnitude of the Reorganized Debtor's payments make it impossible to ascertain what the Debtor

5  proposes to pay.

6      Pursuant to § 1129(b)(2)(A)(i)(II), a plan must, at a minimum, pay deferred cash payments

7  totaling at least the allowed amount of such claim. *See In re Arnold*, 806 F.2d 937, 940 (9th Cir.

8  1986). In other words, a disclosure statement and/or the plan of reorganization it describes must

9  include sufficient information for a secured creditor to perform a discounted cash flow analysis of

10  the deferred payments proposed under the plan to determine if the present value of the deferred

11  amount of such payments equals the creditor's secured claim. The Disclosure Statement lacks

12  sufficient information for the Bank to determine what it will receive under the Plan.

13      <u>Section 1129(b)(2)(A)(ii) is inapplicable.</u> The Plan does not meet the requirements of §

14  1129(b)(2)(A)(ii) because the sale of the Shopping Center does not occur substantially

15  contemporaneously with confirmation. Furthermore, the Plan does not permit the Bank to credit

16  bid at the sale of the Shopping Center (although the Bank is not contending that it will credit bid at

17  this time). The Plan lacks information supporting its proposed sale dates and price points. There

18  is no adequate basis for determining whether the Shopping Center will be sold three to five years

19  after confirmation. The Disclosure Statement makes no reference to any firm sales commitment.

20      Section 1129(b)(2)(A)(ii) deals with sales under a plan of reorganization. The court in *In*

21  *re Georgetown Park Apartments*, 103 B.R. 248 (Bankr. S.D. Cal. 1989), addressed the issue of

22  what qualified as a "sale" under a plan and concluded that a plan which provided no identifiable

23  buyer at a time substantially contemporaneous with confirmation was unconfirmable. The court

24  reasoned that the delay between plan confirmation and the sale assigned the entire risk of

25  fluctuations in the market value to the secured creditor. *Id* at 249.

26      The court explained "the fact that the debtor has identified a date, the price and the terms

27  of a sale in the absence of an identifiable buyer does not make the proposed sale any less

28  speculative… [m]erely identifying the date, price and terms is certainly no assurance that a ready,

804792.1 | 023000-0724

13

OBJECTION TO ADEQUACY OF DISCLOSURE STATEMENT
IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION

1   willing and able purchaser will be found at the price and terms when the debtor conducts its

2   sale…" *Id.*

3         Hence, for a sale to qualify for treatment pursuant to § 1129(b)(2)(A)(ii), the sale must

4   occur substantially contemporaneous with the plan's confirmation. *See also In re Western Real*

5   *Estate Fund, Inc.*, 75 B.R. 580, 589 (Bankr. W.D. Okla. 1987); *In re Swiftco, Inc.,* 1988 Bankr.

6   LEXIS 2251, *43 (Bankr. S.D. Tex. 1988) ("Nevertheless, for a debtor to propose a plan providing

7   for a possible future sale of property without specified terms is wholly fruitless under

8   § 1129(b)(2)(A)(ii).  For a court to approve a sale in advance without knowing its date and terms

9   contradicts the protections of the Code.")

10        In any event, the Plan contemplates a sale of real property, but does not provide for the

11  Bank's ability to credit bid at such sale.  Section 1129(b)(2)(A)(ii) reads:

12                  (ii) for the sale, <u>subject to section 363(k) of this title</u>, of any property
                    that is subject to the liens securing such claims, free and clear of
13                  such liens, with such liens to attach to the proceeds of such sale, and
                    the treatment of such liens on proceeds under clause (i) or (iii) of
14                  this subparagraph;…

15        The Plan does not mention the Bank's credit bid rights.  The Plan thus appears to deprive

16  the Bank of its credit bid rights pursuant to § 363(k).  Any plan which involves the sale of

17  property subject to liens to be sold free and clear of liens, but which does not preserve credit bid

18  rights is unconfirmable as a matter of law. *See, e.g., H & M Parmely Farms v. Farmers Home*

19  *Admin.,* 127 B.R. 644 (D.S.D. 1990); *In re Monarch Beach Venture, Ltd.*, 166 B.R. 428, 433 (C.D.

20  Cal. 1993) ("Thus, at least in this Circuit, the right to credit bid may not be taken from the

21  creditor."); *In re California Hancock, Inc.*, 88 B.R. 226, 229-231 (B.A.P. 9th Cir. 1988) (affirming

22  bankruptcy court's decision to deny confirmation of the debtor's plan where it ruled that § 363(k)

23  applied to property being sold through a plan of reorganization); *see also In re Realty Invest., Ltd.*

24  *V,* 72 B.R. 143, 146 (Bankr. C.D. Cal. 1987) (deciding secured creditor could bid the full amount

25  of its claim under § 363(k), not just the amount of its secured claim determined under § 506(a)).

26  Consequently, the Plan cannot be confirmed over the Bank's objection pursuant to §

27  1129(b)(2)(A)(ii).

28  ///

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

804792.1  |  023000-0724

14

OBJECTION TO ADEQUACY OF DISCLOSURE STATEMENT
IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION

Case: 10-60373    Doc# 75   Filed: 02/11/11   Entered: 02/11/11 16:43:44   Page 19 of
21

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**3.**      **The Plan Cannot Satisfy § 1129(b)(2)(A)(iii).**

As the Plan does not meet the requirements of clauses § 1129(b)(2)(A)(i) or (ii), the Plan must provide for the "indubitable equivalent" in order for a cramdown to be fair and equitable. The Plan fails to provide the Bank with the indubitable equivalent of its claim because it cannot be said the Bank shall be repaid "without doubt."

In order for a plan of reorganization to satisfy the indubitable equivalence prong of § 1129(b)(2)(A)(iii), the treatment under the plan must "insure the safety of or prevent jeopardy to the principal." *See In re Arnold & Baker Farms*, 85 F.3d 1415, 1422 (9th Cir. 1996); *see also In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935). To the extent a creditor is forced to assume the risk of receiving less in a sale, it is not receiving the indubitable equivalence of its collateral. *In re Arnold & Baker Farms*, 85 F.3d at 1422 (citing *In re Monarch Beach*, 166 B.R. 428, 436 (C.D. Cal. 1993) for the proposition that shifting the risk of plan failure to a creditor does not satisfy fair and equitable). By extending the maturity date and altering the terms of the Bank's loan, the Debtor is increasing the Bank's risk exposure, without providing a mechanism by which any distributions will be "completely compensatory" and without doubt. *In re Murel Holding Corp.*, 75 F.2d at 942. Indeed, the Debtor's Plan is riddled with doubt.

**F.**      **The Plan Violates the Absolute Priority Rule**

All creditors including the unsecured creditors get paid in three years, from the Bank's collateral and cash collateral and the Bank gets paid in maybe three, but more likely in five, years. There is something seriously wrong with that picture. The absolute priority rule and the fair and equitable standard are generally the same under Section 1129(b)(1) and (2) and the rule of law is that the creditors are to be paid in the order of their priority. This Plan clearly violates the absolute priority rule (see e.g. *In re: Miami Center Associates, Ltd.* 144 B.R. 937 (S.D. Fla. 1992); *In re Monarch Beach* 166 B.R. 428(C.D. Cal. 1993)). Therefore the Plan cannot be confirmed.

///

///

///

///

804792.1 | 023000-0724

15

OBJECTION TO ADEQUACY OF DISCLOSURE STATEMENT
IN SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION

IV.

**CONCLUSION**

For the foregoing reasons, dissemination of the Debtor's Disclosure Statement and accompanying Plan should not be approved and the Court cannot approve any Plan that treats the Bank in a manner inconsistent with the Bankruptcy Code.

DATED: February 11, 2011        FRANDZEL ROBINS BLOOM & CSATO, L.C.
                                   MICHAEL GERARD FLETCHER
                                   BERNARD R. GIVEN II
                                   JOY E. MASON

By:  /s/ Joy E. Mason
      JOY E. MASON
      Attorneys for Cathay Bank

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

804792.1 | 023000-0724

16