LAWRENCE A. JACOBSON SB# 057393
SEAN M. JACOBSON SB# 227241
COHEN AND JACOBSON, LLP
900 Veterans Boulevard, Suite 600
Redwood City, California 94063
Telephone: (650) 261-6280
Facsimile: (650) 368-6221

Attorneys for Debtor
China Village, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>CHINA VILLAGE, LLC,<br><br>                Debtor. | Case No. 10-60373 ASW<br><br>Chapter 11<br><br>Date:  February 18, 2011<br>Time:  2:00 p.m.<br>Place:  Hon. Arthur S. Weissbrodt |

**RESPONSE TO CATHAY BANK'S OBJECTION TO
ADEQUACY OF DEBTOR'S DISCLOSURE STATEMENT IN
SUPPORT OF CHAPTER 11 PLAN OF REORGANIZATION**

Debtor China Village, LLC ("China Village") responds to Cathay Bank's Objection to Adequacy of Debtor's Disclosure Statement in Support of Chapter 11 Plan of Reorganization (the "Objection") as follows:

**I.     INTRODUCTION**

    **A.     Background of Case and Summary of Plan**

This is a single asset real estate case, and as such Debtor timely filed its Plan and Disclosure Statement on January 2, 2011. Debtor immediately set the hearing on the Disclosure Statement on the first available date on the Court's calendar, and is ready to proceed with approval of the Disclosure Statement.

The Plan is a 100% payment plan which contemplates ultimate payment of creditors through the sale or refinance of the Property. The Property has a minimum value of $46,000,000 pursuant to an appraisal obtained in November, 2010, with that value far exceeding all claims in this bankruptcy case. During the term of the Plan the Debtor will make monthly interest payments to Cathay Bank from (a) rental income; and (b) from a further advance which junior lien holder Redwood Mortgage has agreed to make in connection with the Plan. Thus, all claims will be paid in full, and Cathay Bank will receive interest payments for the duration of the term of the plan, with the principal amount paid by the end of the term of the plan (or earlier if the sale or refinance occur prior to the end of the term of the plan).

    **B.     Status of Case**

Debtor is administratively compliant, and this has been a successful Chapter 11 case to date. While the objecting creditor represents to the Court that "almost nothing has happened and this case is languishing," as with prior pleadings presented to this Court by the objecting party and its attorneys, this statement is a misrepresentation of fact. Debtor filed its Chapter 11 Case on October 4, 2010, and since that time has (a) Debtor successfully opposed the objecting party's motion for relief from stay, with the bank being sanctioned for the filing of its motion; (b) Debtor timely filed its Plan and Disclosure Statement; (c) Debtor successfully negotiated with Redwood Mortgage for

1

funding that will allow for interest payments to the senior secured creditor during the term of the Plan; (d) Debtor noticed the hearing on the Disclosure Statement on the first possible date after filing (such that the hearing on approval of the Disclosure Statement will be heard just over four months after the filing of the case); and (e) Debtor has recently obtained a new tenant that will increase the monthly rental income by $10,000. Indeed, counsel for Debtor cannot fathom how a case can "languish" after four months, much less after four months of successful operations.

**II.   SUMMARY OF OBJECTION**

A thorough review of the Objection reveals very little in terms of actual objections to the Disclosure Statement. Rather, the brief presents the all-too-common mistake of arguing confirmation issues at the Disclosure Statement stage, and also constitutes the unfortunately predictable litigiousness from a creditor that is to receive 100% payment in the bankruptcy case.

The brief also continues the proliferation of the "name-calling" strategy which this creditor has unsuccessfully attempted from the outset of this case. While the creditor and/or its counsel cannot seem to help themselves, Debtor submits that the continued name-calling tactic constitutes a mask for the lack of substance in the bank's arguments. In sum, the Objection presents a confirmation brief at the Disclosure Statement stage, and presents very little substantive argument as to the Disclosure Statement.

**III.   LEGAL STANDARD**

In *In re Texas Extrusion Corp*, 844 F.2d 1142, at 1157 (5th Cir., 1988), the court considered similar arguments that a disclosure statement should not be approved for an alleged lack of further detail (including complaints regarding valuations) and, in approving the disclosure statement, explained the standard for approval as follows

> "Appellants assert that 'adequate information' was not contained in the Disclosure Statement sent to their creditors. We disagree. The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court. *In re Brandon Mill Farms, Ltd., 37 B.R. 190 (Bankr.N.D.Ga.1984)*; *In re Stanley Hotel, Inc., 13 B.R. 926 (Bankr.D.Co.1981)*. We find no abuse of discretion in the bankruptcy court's approval of the Disclosure Statement."

2

As is discussed below, under the circumstances of this case, approval is warranted as the Plan contains sufficient detail and the legal issues argued by the objecting party can be determined at confirmation.

The hearing on the disclosure statement is not the occasion for adjudication of issues that can be explored in discovery, briefed prior to the confirmation hearing, and determined at the confirmation hearing. In *In re Watervile Timeshare Group*, 67 B.R. 412, at (Bkrtcy N.H, 1986), the court made the point that the hearing on the disclosure statement should not be utilized to attempt to resolve confirmation issues. In this regard, the court made the following analysis at page 413:

> "In my judgment approval of a disclosure statement is an interlocutory action in the progress of a Chapter 11 reorganization effort leading to a confirmation hearing at which all parties have ample opportunity to object to confirmation of the plan. It is not intended to be the primary focus of litigation in a contested Chapter 11 proceeding. See, *In re Hughes Marina, Inc., 16 Bankr. 6, 6 BCD 978, 979 (Bankr. W.D. N.Y. 1980)*; *Matter of Georgetown of Kettering, 17 Bankr. 73, 8 BCD 934, 935 (Bankr. S.D. Ohio 1981)*. 5 Collier On Bankruptcy, 15th Ed. § 1125.03[1] (1986)."

Such is the case here, where the majority of the Objection argues issues that pertain to the confirmation of the Plan, not the adequacy of the Disclosure Statement. (*See In re Dakota Rail, Inc.* (DC D MN 1980) 104 BR 138, 143 (Plan confirmation issues are left for confirmation and are not determined at the Disclosure Statement hearing)).

### IV. RESPONSE TO OBJECTIONS TO THE CONTENT OF THE DISCLOSURE STATEMENT

The section of the Objection headed and addressing "The Content of the Disclosure Statement" constitutes just over one page of the sixteen page brief.[1] (Objection 6:7-7:9). Debtor will address the complaints regarding disclosure in the order they are raised.

---

[1] In fact, the majority of the brief appears to Debtor to be a collaborative cut-and-paste from other briefs. The factual background section is a cut-and-paste from the bank's relief from stay motion, and the majority of the legal analysis appears to be cut-and-paste from a template (as there is little application to the facts of this case, with the text reading as if taken from a standard template).

3

### Manner of Sale of the Property

The bank initially states that the Disclosure Statement fails to state how or when the Debtor intends to sell the property, and does not discuss recourse if the Debtor defaults. Review of the Disclosure Statement dispels each of these complaints. The Disclosure Statement includes a full section on the procedure for selling the Property (Page 23:16-24:18); and discusses the time frame for the sale (Page 24:25-25:19). Further, the Plan expressly provides for remedies upon default, specifically stating that upon any default creditors may enforce any rights under the Bankruptcy Code, including conversion of the case. (Plan 15:21-16:1).

### Amount of the Bank's Claim

The next argument is that Debtor does not state the amount of the bank's claim, that the Debtor refers only to "outdated appraisals," that the bank cannot ascertain whether it is secured, what interest is accruing, and whether the bank is receiving the "indubitable equivalent" of its secured claim. Again, these assertions are perplexing because the Disclosure Statement is clear on all of these issues. Initially, the Debtor is troubled that the bank alleges that the Disclosure Statement refers only to outdated appraisals. To the contrary, the Disclosure Statement states:

> "Debtor has obtained an appraisal dated November 12, 2010, which attributes a minimum value of $46,000,000. The appraisal was performed by Collier's International. Any interested persons may obtain a copy of the appraisal by request to Debtor's counsel." (Page 10:7-9).

*Indeed, counsel for Cathay Bank requested a copy of the appraisal, and Debtor provided the appraisal as requested, and therefore it is incomprehensible how the bank can represent to the Court that only "outdated" appraisals are utilized.*[2]

Further, the amount of the bank's claim is concisely set forth as follows:

> "The C-2 Claim pertains to the secured claim of Cathay Bank and East West Bank. This claim is owing in the principal amount of $22,300,000 in addition to any unpaid and accrued interest and other costs claimed by this claimant." (Page 14:9-18).

---

[2] This representation is eerily similar to the bank's false representation in the Motion for Relief From Stay that property taxes were delinquent in the amount of $345,000 when in truth the property taxes were current.

4

Debtor notes that this is the same figure utilized by the bank in its own Proof of Claim filed on February 7, 2011. Debtor cannot ascertain how it could more clearly state the amount of the bank's claim. Further, given the appraisal of $46,000,000, Debtor submits that all reasonable parties can understand that the $22,300,000 senior claim is fully secured (and indeed is being treated as such in the Plan with full payment of principal as well as interest during the term of the plan). For the same reason, Debtor cannot understand what further description would be necessary to state that the bank is receiving the indubitable equivalent of its current collateral (i.e., a fully secured lien in the amount of $22,300,000 on a property worth $46,000,000).

With respect to payment of interest, the Disclosure Statement states that:

> "Commencing on the Effective Date, Cathay Bank will receive monthly interest-only payments from the Redwood Plan Funding. Interest shall accrue on the principal balance of $22,300,000 at the rate of 2% over the one-year LIBOR ("Cathay Interest Rate"). The Cathay Interest Rate will be set as of the date of confirmation of the Plan, and shall be fixed through the duration of the Term of the Plan." (Page 19:2-8).

Thus, the contention that creditors have not been advised of the interest rate is without merit.

The bank next complains that "Debtor places the onus for the establishment of the Bank's claim on the Bank for all amounts in excess of the principal balance." Debtor does not dispute this statement, but cannot understand the complaint. The Plan *does* require the bank to establish any amounts alleged in excess of its principal balance, and this process is discussed in detail in the Disclosure Statement. (Page 19:9-20:24). Debtor can certainly not disclose the bank's claimed costs, as this information is solely within the knowledge of the bank.

<u>Payment of the Bank's Claim</u>

With respect to payment of the bank's claim, the Objection argues that the bank will be paid only a fraction of its claim upon the sale of the Property, that all other creditors will be paid first, and that the bank will only be paid after the expiration of five years. This argument is contrary to the terms of the Plan and Disclosure Statement, and does not make logical sense. Debtor has acknowledged that Cathay holds the senior deed of trust in the amount of $22,300,000, and therefore the Plan cannot, and does not, purport to sell the property free of the lien and use the funds for other

5

purposes.

Rather, the Disclosure Statement explains that the bank will be paid from the sales proceeds:

- "The balance of the Class C-2 Claim shall be due and payable three years after the Effective Date, with such payment to be made from the sale or refinance of the Property." (Page 19:9-11)
- The sale will require court approval by noticed motion. (Page 24:2-6).
- "If the proceeds from any sale of the Property, after closing and related costs, are insufficient to pay the full Class C-2 Claim, the C-2 Claim shall be paid from Debtor's remaining assets." (Page 15:17-19)

Thus, the bank will be paid from the proceeds and is not being subordinated (*see also* discussion above regarding the secured nature of the bank's claim).

<u>Cash Flow Projections</u>

The bank complains that "the Disclosure Statement needs to attach a cash flow projection as an exhibit," but does not state why the bank needs such a spreadsheet. The Disclosure Statement contains two full pages which describe the tenants, vacancies, income, and expenditures, and as such no "exhibit" is necessary, warranted, or required. The bank's argument on this issue is that "the Disclosure Statement describes an optimistic guess as to its average monthly income based upon only a few months of collections." Again, this is an utterly false statement.

The Disclosure Statement details the income and expenses from the property for the six months preceding the filing of the Disclosure Statement, stating the precise income and expenses for that period. (Page 86-9:24). The Disclosure Statement further provides averages from that six month period for both income and expense, while also describing the market value of current vacancies. Thus, the Disclosure Statement does not provide an "optimistic guess" as to income and expense, but rather provides a calculation from actual past performance. Ironically, the bank appears to be demanding that Debtor provide a spreadsheet showing *future* income and expense which, rather than past performance, would be more akin to a "guess" than the actual figures used by the Debtor.

6

Debtor elected instead to utilize actual figures.

Further, Debtor's feasibility analysis includes use of the current average income, less the average expense, with a property tax impound, which thereby yields the current profit analysis. (Page 27:23-28:3). This amount will increase with new tenants (and in fact a new tenant with a monthly rent of $10,000 has been subsequently obtained), however Debtor has not used hypothetical or "optimistic" figures.

### Status of Sale

The final complaint in the Objection is that the Disclosure Statement does not state the Debtor's efforts to sell the Property. This is an unusual complaint because the bank obtained the appointment of a state court receiver in June, 2009, and therefore the Debtor has not been authorized to sell the Property since that time. Rather, the property has been under the control of the bank's own receiver. The appointment of the receiver is adequately disclosed in the Disclosure Statement (Page 10:10-24).

Further, the Disclosure Statement discusses the proposed manner of sale in detail, including the appointment of brokers, court approval, and related matters. (Page 23:16-24:18). While Debtor would like to be able to predict the name of the buyer, the date of sale, and the amount of the sale, unfortunately it cannot, and therefore those matters are not disclosed and cannot be disclosed.

### Summary

In sum, none of the objections to the disclosures made by the Debtor have any merit. Debtor expresses its frustration in having to respond to the bank's assertions which are clearly contracticted by the text of the Disclosure Statement. Counsel for Debtor has had to take the time to cite to the page and line numbers which dispel each of the bank's arguments, which time and expense should not have been necessary. Debtor contends that the Objection is purely dilatory.

**IV.    CONFIRMATION ISSUES**

The Objection contains nearly ten pages of discussion regarding alleged confirmation issues. As discussed above, the determination of these issues are not appropriate at the Disclosure Statement

stage. Further, Debtor believes that much discussion in this section is not applicable to this case and is a cut and paste from another case or template. Debtor will not respond to the confirmation issues, but suffice to say it agrees with none of the bank's arguments. To the extent that the Court desires to discuss confirmation issues, counsel for Debtor will be prepared to discuss any mattes which the Court raises.

In sum, Debtor submits that this is not only a confirmable plan but is a 100% payment plan. Debtor has secured the commitment of Redwood Mortgage to provide financing for interest payments to Cathay Bank, and the equity in the Property will be utilized for the benefit of creditors via either a sale or refinance.

Respectfully submitted.

Dated: February 16, 2011                COHEN AND JACOBSON, LLP

                                        By: /s/ Lawrence A. Jacobson
                                            Lawrence A. Jacobson

8